Fred W. Schwinn
fred.schwinn@sjconsumerlaw.com
Raeon R. Roulston
raeon.roulston@sjconsumerlaw.com

## CONSUMER LAW CENTER, INC.
### 12 South First Street, Suite 1014
### San Jose, CA  95113-2418

(408) 294-6100
Fax (408) 294-6190
www.sjconsumerlaw.com

February 13, 2014

The Honorable William H. Orrick
United States District Court
450 Golden Gate Avenue
San Francisco, CA  94102

Re:     Gold v. Midland Credit Management, Inc., *et al.*
        CAND Case No. 3:13-CV-02019-WHO

Dear Judge Orrick:

This letter is submitted pursuant to paragraph 4 of the Court's Standing Order for Civil Cases. This letter is to address a discovery issue that has arisen in this case, namely the failure of Defendants, Midland Credit Management, Inc. (hereinafter "MCM"), and Midland Funding, LLC (hereinafter "Midland Funding"), to submit amended responses to Plaintiff's written discovery.  On August 6, 2013, Plaintiff served written discovery on MCM and Midland Funding, requesting that Defendants respond to interrogatories, and produce documents and electronically stored information ("ESI") responsive to Plaintiff's requests within 30 days.  On September 23, 2013, Defendants served responses consisting almost exclusively of objections, and vague promises of future document production.  Thereafter in October 2013, Defendants produced some documents, but the document production is incomplete.

It has been six months since Plaintiff propounded written discovery, and Defendants continue to stall while promising to provide documents at some unspecified future date.  All counsel in this matter have engaged in extensive correspondence and telephone calls in an attempt to resolve this dispute. The parties believe that they have substantially complied with the Court's Standing Order. The discovery cut-off date in this matter is April 30, 2014, and a jury trial is currently set for October 6, 2014.

### Plaintiff's Statement

This is a class action case brought by an individual consumer, to address Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33.  Generally, Plaintiff alleges that Defendants sent a collection letter and "educational brochure," to Plaintiff and other consumers in California, each in an attempt to collect a debt previously owed to HSBC Bank.  Plaintiff alledges that Defendants' two page collection letter and "educational brochure" falsely, deceptively, and misleadingly misrepresented that payment to Defendants would reduce the consumer's past due balance with HSBC Bank, and misrepresented that Defendants could alter the manner in which HSBC Bank was reporting the consumer's debt to the credit bureaus.  Plaintiff alleges that these misrepresentations are violations of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and Cal. Civil Code § 1788.17.

### Dispute

Plaintiff seeks production in three main categories of information: 1) interrogatory responses

regarding the number of letters in the form of Exhibit "1" to the Complaint sent by Defendants to California consumers (i.e. class size); 2) the agreement through which Midland Funding obtained Plaintiff's HSBC account, and any exhibits, appendices, or attachments referenced therein (i.e. authority to use HSBC's name); and 3) interrogatory responses regarding Defendants' net worth, the calculation thereof, and all documents which substantiate the said responses (i.e. net worth). Plaintiff served her First Set of Interrogatories and First Request for Production of Documents and Electronically Stored Information on August 6, 2013. Although MCM and Midland Funding have served responses and produced some documents in this matter, both Defendants have failed to make a complete responses and production of documents. Plaintiff's counsel, Fred Schwinn and Rand Bragg, have met and conferred extensively with Tomo Narita, counsel for Defendants, both via email and telephone in an attempt to informally resolve this dispute. Despite many promises of future compliance, it now appears that Defendants are stalling as they have repeatedly failed to serve further discovery responses or make a complete document production.

Both Mr. Schwinn and Mr. Bragg have been communicating by email and telephone with Mr. Narita since September 2013 attempting to informally resolve the dispute. Mr. Narita was granted a two-week extension of time to respond on September 4, 2013. On September 6, 2013, the parties stipulated to the Northern District's Model Protective Order for Standard Litigation. On September 23, 2013, Defendants served discovery responses largely consisting of objections and vague promises of future document production. On October 1, 2013, Mr. Bragg requested in writing that Mr. Narita simply produce the documents that Defendants promised to produce. Mr. Bragg also proposed that the parties enter into a stipulation regarding Defendants' net worth. On October 15, 2013, having had no response, Mr. Bragg contacted Mr. Narita again regarding the responses and the proposed stipulation. Mr. Narita was apologetic and promised future document production. Mr. Bragg and Mr. Narita again spoke by telephone on October 23, 2013, and again Mr. Narita made promises of future production.

On October 28, 2013, Mr. Narita proposed a stipulation regarding the Defendants' net worth. Plaintiff's counsel believe that the proposed stipulation is deficient in a number of ways. On November 13, 2013, Mr. Bragg sent proposed revisions to the said stipulation to Mr. Narita. That same day, Mr. Narita again made excuses for his failure to serve the promised discovery responses, stating that getting information from his "busy clients" was a "challenge." Mr. Narita again promised to "get back to [Mr. Bragg] asap." A month later, on December 17, 2013, Mr. Bragg again contacted Mr. Narita, asking why Defendants' amended discovery responses had not been served even though yet another month had passed. Mr. Narita stated that he had "been following up" with his clients and that he was "hoping to have something to [Mr. Bragg] soon."

On January 6, 2014, Mr. Schwinn sent an email message to Mr. Narita. Mr. Schwinn attached a copy of the Court's Standing Order for Civil Cases, and expressed his dissatisfaction with Mr. Narita's failure to produce documents and his vague assurances of future compliance. Mr. Narita responded that same day and stated that he had "followed up" with his client that day and that he would "push to get [Plaintiff's counsel] further information this week." In his January 6, 2014 email, Mr. Narita did not mention the proposed stipulation regarding Defendants' net worth which Mr. Bragg had sent to him two months earlier. As of the date of filing of this letter, Defendants have not served amended discovery responses nor have Defendants responded to the proposed stipulation regarding net worth. In short, no further discovery responses of any kind have been forthcoming from Defendants since October 2013.

While Mr. Narita has been cordial, and has not *explicitly* refused to produce amended discovery responses and documents, Plaintiff's counsel believe that Mr. Narita is stalling, and attempting to "run out the clock" on Plaintiff's discovery efforts, without serving amended responses or responsive documents and ESI, in order to gain a litigation advantage. The gravamen of Plaintiff's Complaint is

that Defendants – a debt buying enterprise – sent collection letters to numerous California consumers in an attempt to collect defaulted consumer debts originally owed to HSBC Bank.  Defendants' collection letters, Plaintiff alleges, falsely, deceptively, and misleadingly misrepresented that payment to Defendants would reduce the consumer's past due balance with HSBC Bank, and misrepresented that Defendants could alter the manner in which HSBC Bank was reporting the consumer's debt to the credit bureaus.  As such, information regarding the number of collection letters that Defendants sent to California consumers is central to Plaintiff's ability to certify a class and successfully prosecute her case.[1]  Information regarding the assignment of Plaintiff's account from HSBC Bank to MCM and Midland Funding is needed to show the extent to which Defendants were contractually permitted to use HSBC Bank's name in their collection notices.[2]  Plaintiff anticipates that the agreements by which MCM and Midland Funding acquired Plaintiff's account from HSBC Bank expressly prohibit Defendants from using HSBC Bank's name or making any representations regarding HSBC Bank, other than that HSBC Bank is the original creditor of the debt being collected.  In fact, on November 12, 2013, Mr. Schwinn expressly explained this point to Mr. Narita in an email which included three exemplars of HSBC Bank assignment agreements (obtained without protective orders) which contain language which specifically restricts Defendants' use of HSBC Bank's name in collection letters.  Loan Sale Agreements like the document requested by Plaintiff are not confidential, do not contain "highly sensitive" information which implicate "a core competitive function of Defendants' business," are not subject to any privilege, are relevant, and may lead to the discovery of admissible evidence.  Finally, in every class action, information regarding defendants' net worth is essential to evaluating the case and certifying a class action.[3]  Defendants should not be allowed to jovially stall and avoid producing discovery responses and documents which should have been part of Defendants' initial disclosures.

On February 10, 2014, Mr. Schwinn contacted Mr. Narita, and offered to meet and confer in person in his Downtown San Jose office regarding Defendants' amended responses and the proposed stipulation regarding Defendants' net worth.  Mr. Narita declined to meet in person.  Plaintiff therefore requests that the Court assist her with this matter and specifically order Defendants to make supplemental discovery responses and to produce documents and ESI regarding the three main categories of information sought: 1) interrogatory responses regarding the number of letters in the form of Exhibit "1" to the Complaint sent by Defendants to California consumers in the one year prior to the filing of this action; 2) the agreement through which Midland Funding obtained Plaintiff's HSBC account, and any exhibits, appendices, or attachments referenced therein; and 3) interrogatory responses regarding Defendants' net worth, the calculation thereof, and the production of all documents which substantiate the said net worth calculations.

## Defendants' Statement

Defendants concede that, unfortunately, there have been some delays in getting amended discovery responses to Plaintiff, and Defendants appreciate the patience and professional courtesies that have been extended by Plaintiff's counsel.  This is hardly a strategic effort to "run out the clock" as the Plaintiff suggests.  The delay is simply a result of the breadth of Plaintiff's discovery requests and the delays caused by the holidays and by a reassignment of the Defendants' personnel who are handling this case.  Although certain discovery disputes may require the Court's intervention, Defendants have

---

1  See *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 615-16 (N.D. Cal. 2006); *Ramirez v. Palisades Collection, LLC*, 2008 U.S. Dist. LEXIS 112272 at *2-3 (N.D. Ill. Jan. 7, 2008).

2  *Trevino*, 232 F.R.D. at 617.

3  *Id.*; *Ramirez*, *supra*.

been working hard, in conjunction with Plaintiff, to avoid these disputes, or to narrow their scope. Some of the disputes identified by Plaintiff have been resolved.

Regarding the number of letters sent to purported class members, Defendant believes this dispute has been resolved by the amended request for admissions served by defendant Midland Credit Management, Inc. ("MCM") which admit that between May 2, 2012 and the present, MCM sent letters in the form of Exhibit "1" to at least 10,000 persons who had an address in the State of California concerning an unpaid financial obligation originated by HSBC Nevada Bank, N.A. The exact number of letters will be provided with MCM's amended interrogatory responses shortly. There was a significant delay in getting the precise number of letters to Plaintiff because, to obtain this information, a fairly-sophisticated computer query had to be designed and run by members of MCM's information technology department.

Regarding the net worth discovery, although the Defendants do not concede that all of the discovery sought by Plaintiff is appropriate, they believe that any dispute over the scope of the discovery can be resolved if the parties can execute an acceptable net worth stipulation. Defendants have been assessing the draft stipulation circulated by Plaintiffs and have done further research on the issue and have now presented Plaintiff with a revised proposal. If an agreement cannot be reached on this issue, Defendants would like to address it with the Court.

With respect to Plaintiff's request for the Purchase and Sale Agreement with HSBC relating to Plaintiff's account, there is a discovery dispute that the Court must resolve. The Purchase and Sale Agreement is a highly sensitive document containing information that relates to a core competitive function of Defendants' business; namely, the purchase of delinquent financial obligations. Plaintiff wants a copy of this document because it allegedly will "expressly prohibit Defendants from using HSBC Bank's name or making any representations regarding HSBC Bank, other than that HSBC Bank is the original creditor of the debt being collected." Assuming this were true, it is completely irrelevant. Plaintiff was not a party to the contract and she is not pursuing a claim based on a status as a third party beneficiary under the contract. Rather, Plaintiff claims that the collection letter sent by MCM falsely suggested that Defendants had the ability to alter the manner in which HSBC was reporting Plaintiff's account to the consumer reporting agencies. Assuming a trier of fact agrees with this theory (Defendants deny this), then Plaintiff can prove, through discovery from Defendants, whether this was true or false, i.e., whether Defendants in fact had the ability to alter the manner in which HSBC was reporting the account. Given this, it simply does not matter if the HSBC contract contains any restrictions on the Defendants' use of the HSBC name.

As the Purchase and Sale Agreement is neither relevant nor likely to lead to the discovery of admissible evidence, it should not be produced. Defendants believe they have a strategic advantage in the competitive market for the purchase of delinquent accounts, and that this advantage is due, in part, to their commitment to refusing to disclose the contents of their purchase and sale agreements. Counsel for Plaintiff make their living suing debt purchasers and debt collectors, and they have sued Defendants on multiple occasions. It is apparent that the attorneys for Plaintiff collect these sensitive contracts so they can use them for their own strategic litigation purposes. Thus, Defendants are very concerned that even if the Purchase and Sale Agreement is provided to Plaintiff pursuant to the Protective Order, counsel for Plaintiff will subsequently disclose the Agreement and/or will find some way to use its contents in connection with other litigation.


/s/ Fred W. Schwinn_____          /s/ Tomio B. Narita_____
Counsel for Plaintiff                 Attorney for Defendants