```
1                    UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                         SAN JOSE DIVISION

3
        ELLEN GOLD,
4
                   PLAINTIFF,            CASE NO.  CV-13-2019-BLF
5
          VS.                            SAN JOSE, CALIFORNIA
6
        MIDLAND CREDIT MANAGEMENT,       AUGUST 14, 2014
7       INC.,
                                         PAGES 1 -42
8                  DEFENDANT.

9

10

11                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE BETH LABSON FREEMAN
12                   UNITED STATES DISTRICT JUDGE

13
                      A-P-P-E-A-R-A-N-C-E-S
14

15      FOR THE PLAINTIFF:    CONSUMER LAW CENTER, INC.
                              BY:  RAEON ROULSTON
16                            12 SOUTH FIRST STREET, SUITE 1014
                              SAN JOSE, CALIFORNIA 95113
17

18      FOR THE DEFENDANT:    SIMMONDS & NARITA LLP
                              BY:  TOMIO NARITA
19                            44 MONTGOMERY STREET, SUITE 3010
                              SAN FRANCISCO, CALIFORNIA 94104
20

21      OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                                   CERTIFICATE NUMBER 8074
22

23          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
24

25
```

```
1      SAN JOSE, CALIFORNIA                    AUGUST 14, 2014

2                      P R O C E E D I N G S

3          (COURT CONVENED.)

4              THE CLERK:  CALLING CASE 13-2019, GOLD VERSUS

5      MIDLAND CREDIT MANAGEMENT, INC., ET AL.

6          COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

7              MR. ROULSTON:  GOOD MORNING, YOUR HONOR.  RAEON

8      ROULSTON FROM CONSUMER LAW CENTER FOR MS. GOLD.

9              THE COURT:  HELLO, MR. ROULSTON.

10             MR. NARITA:  GOOD MORNING, YOUR HONOR.  I'M TOMIO

11     NARITA FROM SIMMONDS & NARITA FOR DEFENDANTS.

12             THE COURT:  GOOD MORNING.

13             MS. MAYILYAN:  GOOD MORNING, YOUR HONOR.  LIANA

14     MAYILYAN FOR DEFENDANTS.

15             THE COURT:  HELLO.  HOW ARE YOU?  ALL RIGHT.  THIS

16     IS THE TIME SET FOR CLASS CERTIFICATION.  I GUESS I SHOULD GET

17     RIGHT TO THE HEART OF IT.

18         CASES UNDER THE FDCPA ARE CERTAINLY PREFERRED TO BE CLASS

19     ACTIONS, I THINK, BY CONGRESS.  AND IT APPEARS THAT THE LETTER

20     IN DISPUTE IS BEING CHALLENGED BASED ON THE CONTENT OF THE

21     LETTER ITSELF, NOT HOW INDIVIDUALS REACTED TO IT, AND SO THAT

22     DOES PRESENT US WITH COMMON QUESTIONS.

23         BUT MY CONCERN, AND IT IS A SERIOUS CONCERN, IS TO HOW WE

24     CAN ASCERTAIN THE CLASS WHEN DEBT IS SO PRECISELY DEFINED IN

25     BOTH FEDERAL AND STATE LAW TO BE HOUSEHOLD, FAMILY, PERSONAL
```

1    DEBT?

2        I EVEN HAVE SOME CONCERNS HAVING READ THE MATIN CASE,

3    M-A-T-I-N, I KNOW THAT'S EASTERN DISTRICT OF PENNSYLVANIA AND

4    IT'S NOT BINDING BUT IT GAVE ME PAUSE TO SEE ON SUMMARY

5    JUDGMENT THAT A CONSUMER LOST THE CASE BECAUSE SHE, I THINK IT

6    WAS A SHE, WAS UNABLE TO RECALL THE PRODUCTS OR ITEMS OR

7    SERVICES THAT WERE PURCHASED ON THE CREDIT CARD.

8        SO, MR. ROULSTON, THAT'S A LOT, BUT I WANT -- THAT'S WHERE

9    MY CONCERNS ARE.

10        MR. ROULSTON:  AND I UNDERSTAND THAT, YOUR HONOR.  I

11   THINK THAT, TOO, WAS ESSENTIALLY THE ONLY REAL ISSUE.

12        THE COURT:  SURE.

13        MR. ROULSTON:  AND WE SPENT THE VAST MAJORITY OF OUR

14   REPLY BRIEF ADDRESSING THAT ISSUE.

15        I THINK THE COURT NEEDS TO DISTINGUISH BETWEEN MAKING THE

16   ELEMENTS OF AN INDIVIDUAL CASE, WHICH IT IS TRUE THAT IT IS THE

17   PLAINTIFF'S BURDEN TO SHOW THAT THE DEBT AT ISSUE WAS A

18   CONSUMER DEBT, THAT IT WAS INCURRED FOR PERSONAL, FAMILY OR

19   HOUSEHOLD PURPOSES, WHICH IS WHAT WE'RE DOING TODAY IS

20   CERTIFYING A CLASS.

21        AND WE HAVE CITED NUMEROUS CASES, BOTH IN THIS DISTRICT

22   AND OUT OF THIS DISTRICT, THAT SAY THAT ASCERTAINING THE NATURE

23   OF THE DEBT IS NOT A HINDRANCE TO CERTIFYING THE CLASS.  IT'S

24   SIMPLY AN ADMINISTERIAL ISSUE THAT CAN BE SORTED OUT DURING THE

25   CLAIMS PROCESS, FOR EXAMPLE, BY A SIMPLE QUESTION, BY EXAMINING

1    THE RECORDS OF THE LENDER OR THE DEBT COLLECTOR.

2        IT IS -- FOR MS. GOLD HERSELF WE HAVE MADE THE, I THINK,

3    THE REQUIRED SHOWING DURING HER DEPOSITION AND WITH HER SWORN

4    DECLARATIONS HERE.

5        BUT AS TO THE ABSENT CLASS MEMBERS --

6            THE COURT:  AND I'M NOT RULING ON SUMMARY JUDGMENT

7    TODAY CLEARLY.  I KNOW THIS IS NOT A MERITS DETERMINATION.  I

8    ALWAYS HAVE TO UNDERSTAND THE ISSUES AND LOOK GLOBALLY AT WHAT

9    THE ISSUES AND THE MERITS WOULD BE.

10       BUT THIS IS NOT A MERITS INQUIRY.

11           MR. ROULSTON:  RIGHT.  SO I BELIEVE THEN THAT THE

12   POINT THAT WE MADE IN THE REPLY BRIEF IS SIMPLY THAT THIS IS AN

13   ADMINISTERIAL ISSUE AND NOT AN ISSUE THAT SHOULD PRECLUDE

14   CERTIFICATION.

15           THE COURT:  SO, YOU KNOW, I WAS -- I READ THE CASES

16   AND IT WAS -- THE CASES WHERE THE COURTS WERE UNTROUBLED BY THE

17   ABILITY TO DISCERN BETWEEN COMMERCIAL AND PERSONAL DEBT, IT

18   SEEMED THAT THOSE JUDGES WERE OF THE OPINION THAT IT WAS

19   OBVIOUS AND NATURAL, THAT A SIMPLE QUESTION WOULD BE

20   SUFFICIENT.

21       AND THEY SEEMED UNCONFLICTED ABOUT A PROCESS WHEREBY A

22   SINGLE QUESTION COULD BE ASKED AND ONE CAN EASILY DRAFT SUCH A

23   QUESTION WAS YOUR DEBT PRIMARILY PERSONAL, FAMILY, AND

24   HOUSEHOLD DEBT AND ONE COULD SAY YES OR NO.

25       AND SO, YES, WE CAN ALL IMAGINE HOW SIMPLE THAT IS, BUT

1      THAT SIMPLICITY OF CREATING A FORM, I THINK, MAY MASK THE

2      COMPLICATION OF DEALING WITH THE FACT THAT AN INDIVIDUAL MAY

3      HAVE A TREMENDOUS MOTIVE TO BE LESS THAN TRUTHFUL ABOUT THE

4      NATURE OF THE DEBT OR IF NOT LESS THAN TRUTHFUL, LESS THAN

5      THOUGHTFUL AND REFLECTIVE ABOUT IT WHERE THE ANSWER THAT GETS

6      ME MONEY IS, YES, AND THE ANSWER THAT IT EXCLUDES ME FROM

7      GETTING MONEY IS, NO.  IT DOESN'T TAKE MUCH TO THINK, WELL, I

8      DON'T REALLY KNOW SO I'LL JUST SAY YES BECAUSE I'M SURE I MUST

9      HAVE BOUGHT A PACK OF GUM ON MY CREDIT CARD AT SOME POINT.

10          SO I HAVE TROUBLE WITH THAT.

11          BUT I THINK ALSO I AM VERY TROUBLED BY IT APPEARS THAT

12     FACT DISCOVERY HAS CLOSED; IS THAT CORRECT?

13              MR. ROULSTON:  YES, YOUR HONOR, WITH A SMALL

14     EXCEPTION THAT I BELIEVE THERE WERE SOME DISCOVERY ORDERS AND

15     WE STILL NEED TO FINISH 30(B)(6) DEPOSITION.

16              THE COURT:  GOOD.  BUT IN YOUR PAPERS YOU SUGGEST

17     THAT THE DEFENDANT'S RECORDS WILL REVEAL THE ANSWERS HERE AND

18     YET FROM WHAT I CAN TELL IN READING THE PAPERS YOU HAVE NEVER

19     DONE THAT DISCOVERY, AND SO IF YOU HAVE DONE THAT DISCOVERY AND

20     YOU HAVE ALL OF THEIR RECORDS, THEN YOU CAN TELL ME WHAT YOU

21     HAVE, BUT IF YOU HAVEN'T DONE THAT DISCOVERY, HOW CAN YOU MAKE

22     THAT REPRESENTATION THAT THE DEFENDANT'S RECORDS WILL CLARIFY

23     THIS ISSUE?

24              MR. ROULSTON:  WELL, YOUR HONOR, I BELIEVE HOW WE

25     DEFINED THE CLASS WAS THAT THE DEFENDANT'S RECORDS OR HSBC'S

1    RECORDS MAY REVEAL IT.

2              THE COURT:  AND ON WHAT FACTUAL BASIS DO YOU MAKE

3    THAT ASSERTION?

4              MR. ROULSTON:  WELL, OTHER THAN THE TESTIMONY OF THE

5    CLASS MEMBERS, THE ONLY OTHER WAY TO DETERMINE WHAT ACTUALLY

6    WAS PURCHASED WITH THE CREDIT CARDS OR THE LOANS AT ISSUE, THE

7    DEBT AT ISSUE, WOULD BE BY LOOKING AT THE RECORDS.

8              THE COURT:  BUT YOU DON'T KNOW IF THE RECORDS REVEAL

9    THAT, DO YOU?

10             MR. ROULSTON:  AT THIS POINT IN TIME I DO NOT.

11             THE COURT:  AND HOW WOULD YOU LEARN THAT IF

12   DISCOVERY WAS CLOSED?

13             MR. ROULSTON:  WE WOULD NOT AT THIS POINT, YOUR

14   HONOR.

15             THE COURT:  AT WHAT POINT WOULD YOU IF DISCOVERY WAS

16   CLOSED?  YOU SEE, YOU CAN'T EVEN TELL ME THAT THAT IS A TRAIL

17   THAT I COULD FOLLOW, AND I'M CERTAINLY NOT GOING TO BE

18   FOLLOWING THAT TRAIL LATER.

19         BUT MY CONCERN IS THAT MR. NARITA CITED IN HIS PAPERS THE

20   CLARK CASE FOR THE PROPOSITION THAT THE NINTH CIRCUIT HAS HELD

21   THAT THE DEBT COLLECTOR IS NOT REQUIRED TO RETAIN THE KIND OF

22   INFORMATION, AND THIS IS NOT WHAT THEY SAID.  THEY DIDN'T GO ON

23   THIS EXPLICITLY, BUT I TAKE FROM THE CLARK CASE THAT THE NINTH

24   CIRCUIT HAS HELD THAT THE DEBT COLLECTOR IS NOT REQUIRED TO

25   HOLD THE KIND OF DETAILED INFORMATION THAT WOULD REVEAL THE

1    ACTUAL PURCHASES MADE ON A PURCHASE-BY-PURCHASE BASIS, WHICH I

2    CAN IMAGINE WOULD BE TANTAMOUNT TO MY MONTHLY CREDIT CARD

3    STATEMENT THAT WOULD TELL ME THAT I ATE AT CHILI'S AND THAT I

4    BOUGHT THAT PACK OF GUM AND I GOT MY HAIR CUT AND WENT TO

5    MACY'S OR PENNY'S, OR WHATEVER IT IS I DID, AND THEY'RE NOT

6    REQUIRED TO KEEP THAT.  AND, FRANKLY, FROM YOUR CLIENT'S

7    DEPOSITION, IT WASN'T CLEAR THAT SHE RETAINED SUCH INFORMATION

8    EITHER ABOUT HER OWN.

9        SO THAT'S MY CONCERN IS THAT YOU'VE BASED YOUR ARGUMENT ON

10   THE EXISTENCE OF RECORDS, AND YOU'VE DONE NOTHING TO DETERMINE

11   IF THEY, IN FACT, EXIST.

12       THE LAW SEEMS TO SAY THAT MIDLAND IS NOT REQUIRED TO

13   MAINTAIN IT, AND SO WE CANNOT EVEN ASSUME THAT THEY PERFORMED

14   THEIR LEGAL DUTY OF RETAINING WHERE THEIR LEGAL DUTY IS NOT

15   REQUIRING THE RETENTION OF THAT LEVEL OF INFORMATION.

16       SO THAT'S WHERE I BECOME REALLY TROUBLED.  I'M VERY

17   CONCERNED ABOUT PAYING DAMAGES TO INDIVIDUALS WHO DON'T

18   QUALIFY.

19           MR. ROULSTON:  AND I UNDERSTAND THE COURT'S CONCERN,

20   BUT I THINK THE COURT'S CONCERN IS SOMETHING FOR THE CLAIMS

21   PROCESS AND NOT FOR WHETHER A CLASS CAN BE CERTIFIED OR NOT.

22           THE COURT:  THEN WHY WOULD I HAVE A CLASS IF I'M

23   GOING TO HAVE TO MAKE AN INDIVIDUAL INQUIRY OF EVERY POTENTIAL

24   PLAINTIFF, AND IT'S A SIGNIFICANT INQUIRY AS REFLECTED IN THE

25   DEPOSITION OF YOUR CLIENT OF THE CLASS REPRESENTATIVE.  IT'S

1     MORE THAN SIMPLY A -- THE SIMPLE QUESTION THAT WE COULD IMAGINE

2     ON A CLAIMS FORM.

3          IT WAS A FAIRLY INVOLVED EXPLORATION OF YOUR CLIENT'S

4     RECOLLECTION OF WHAT SHE ACTUALLY PURCHASED AND NOT HER

5     CONCLUSION ABOUT WHETHER IT FELL INTO THE CATEGORY ALLOWED

6     UNDER THE FDCPA OR NOT.

7               MR. ROULSTON:  AND THAT'S FAIR, YOUR HONOR, BUT AT

8     THE SAME TIME THOSE CONCERNS COULD APPLY TO ANY FDCPA CASE.

9               THE COURT:  I AGREE WITH YOU.  AND SO THAT DOES

10    CAUSE ME PAUSE, AND I MENTIONED ALL OF THE CASES THAT YOU CITED

11    THAT THE JUDGES WERE UNCONFLICTED ABOUT CERTIFYING AND MOVING

12    ON, AND I RESPECT THAT AND I TRY TO LEARN FROM THAT.

13              MR. ROULSTON:  YES, YOUR HONOR.  I THINK ULTIMATELY,

14    TOO -- WELL, LET'S LOOK AT IT FROM THE OTHER ANGLE, FROM

15    MR. NARITA'S STANDPOINT.  IF THE COURT WERE TO ADOPT THAT

16    STANDARD, THEN HOW WOULD AN FDCPA CLASS EVER BE CERTIFIED?  I

17    DON'T THINK IT WOULD BE POSSIBLE.  I THINK AFTER THAT YOU WOULD

18    NEVER HAVE ONE.

19          THE CLAIMS PROCESS ON THE CERTIFICATION PROCESS ARE

20    COMPLETELY DIFFERENT.  IN ANY CLASS CASE SOME CLAIM

21    REPRESENTATIVE MIGHT LIE.  IT HAPPENS.

22          BUT I DON'T THINK THAT'S A CONSIDERATION FOR WHETHER

23    MS. GOLD MEETS THE QUALIFICATIONS OF 23(A) AND 23(B).  THAT'S

24    SOMETHING THAT CAN BE DEALT WITH LATER ON.  AND, AGAIN, WE DO

25    CITE A NUMBER OF CASES.

1          THE COURT:  TELL ME -- JUST HELP ME VISUALIZE HOW

2    THAT LOOKS.  I UNDERSTAND ABOUT A CLAIM FORM.

3          MR. ROULSTON:  RIGHT.

4          THE COURT:  AND THEN WHAT RIGHTS, IF ANY, DO YOU

5    BELIEVE THAT THE DEFENDANT HAS TO QUESTION THE VERACITY OR

6    ACCURACY?  I MEAN, SOME PEOPLE MAY LIE.  OTHER PEOPLE MAY JUST

7    NOT RECALL ACCURATELY.  OTHER PEOPLE MAY SIMPLY BE CONFUSED AND

8    SAY IT'S MY CREDIT CARD SO IT'S JUST FOR PERSONAL.  THAT COULD

9    BE A REASONABLE HONEST RESPONSE THAT SIMPLY DOESN'T QUALIFY

10   UNDER THE LAW.

11       I MEAN, THERE ARE A LOT OF THINGS THAT ONE COULD IMAGINE.

12   IT'S NOT COMPLICATED, BUT CONSUMERS, LIKE MS. GOLD, FORGET.

13       AND, FRANKLY, IF YOU ASKED ME WHAT I PUT ON MY CREDIT CARD

14   A YEAR AGO, I HAVE NO IDEA.

15       SO IT RINGS THROUGH AS SHE IS HONEST IN HER TESTIMONY AND

16   SHE'S TYPICAL OF CONSUMERS IN THAT, YOU KNOW, WE HAVE A VAGUE

17   RECOLLECTION BUT NOT A PRECISE RECOLLECTION.

18          MR. ROULSTON:  WELL, FOR EXAMPLE, TO USE MYSELF AS

19   AN EXAMPLE.  I HAVE A CREDIT CARD AND I BUY STUFF ON IT, BUT I

20   DON'T OWN A BUSINESS.  I AM NOT A BUSINESS OWNER.  I DON'T HAVE

21   ANY BUSINESS PURCHASES OR BUSINESS DEBT, THEREFORE --

22          THE COURT:  YOU NEVER TOOK YOUR CLIENT TO LUNCH AND

23   USED YOUR PERSONAL CREDIT AND GOT REIMBURSED?

24          MR. ROULSTON:  NEVER.

25          THE COURT:  OKAY.  MANY LAWYERS WOULD.

1     MR. ROULSTON:  UNFORTUNATELY, I WORK FOR A SMALL

2  FIRM AND THAT'S NOT SOMETHING THAT I DO.

3     THE COURT:  OKAY.

4     MR. ROULSTON:  BUT JUST TO GIVE YOU THAT EXAMPLE.

5  TO THE EXTENT THAT YOU HAVE A CONSUMER THAT HAS NEVER OWNED A

6  BUSINESS OR THE CREDIT CARD IS NOT IN THE NAME OF THE BUSINESS,

7  WE GO THROUGH THIS IN THE BRIEF WHAT THE -- YOU KNOW, THIS IS

8  JUST NOT DIFFICULT.  THIS SHOULD NOT BE IMPOSSIBLE.

9     THERE ARE CONCERNS FOR SURE, BUT AT THE SAME TIME, AGAIN,

10  THESE ARE CONCERNS THAT COULD HAPPEN IN ANY CASE.  IF THIS WERE

11  AN INDIVIDUAL CASE AND MS. GOLD COMES IN AND MAKES AN

12  ALLEGATION AGAINST MIDLAND --

13     THE COURT:  YES.

14     MR. ROULSTON:  -- AND SAYS THAT THIS IS A PERSONAL

15  DEBT, MIDLAND MAY NOT KNOW ONE WAY OR THE OTHER.

16     THE COURT:  BUT THEY COULD SIT HER DOWN AND QUESTION

17  HER AT LENGTH AS THEY DID.

18     MR. ROULSTON:  EXACTLY.  AND, YOU KNOW, OFTEN THAT

19  IS WHAT HAPPENS IN INDIVIDUAL CASES.  OFTEN THAT'S NOT WHAT

20  HAPPENS.

21     AND, YOU KNOW, THAT'S HOW THE DEFENDANTS MIGHT CHOOSE TO

22  EXPEND THEIR ATTORNEY RESOURCES, BUT, AGAIN, FOR THE STAGE

23  WE'RE AT, I DON'T THINK THAT IS A ROADBLOCK.

24     THE COURT:  YES, OKAY.  MR. NARITA?

25     MR. NARITA:  YES, YOUR HONOR.  WELL, I THINK IT

1    BEARS -- I WON'T REPEAT ANY OF THE POINTS THAT HAVE BEEN GONE

2    OVER BY THE COURT, BUT IT BEARS SOME REPETITION AS TO HOW WE

3    GOT HERE.

4        WHAT THE PLAINTIFF DID WAS IN HER COMPLAINT AND IN HER

5    CLASS CERT MOTION, SHE TOLD THE COURT HOW SHE IS GOING TO

6    ASCERTAIN CLASS MEMBER.  SHE WAS GOING TO USE OUR RECORDS OR

7    THE RECORDS OF THE CREDIT.

8        WHEN WE POINTED OUT THAT OUR RECORDS DIDN'T SHOW THAT,

9    SOMETHING THAT SHE ALREADY KNEW BECAUSE SHE ACTUALLY PUT OUR

10   INTERROGATORY RESPONSES INTO THE RECORD WHERE WE SAID WE DIDN'T

11   KNOW IT, WE POINTED THAT OUT AND WE POINTED OUT THAT SHE HADN'T

12   TAKEN ANY DISCOVERY OF THE ORIGINAL CREDITOR, THEN SHE SHIFTS

13   TO SAYING, WELL, HERE'S ALL OF THESE OTHER CASES WHERE THAT

14   DIDN'T BOTHER THE COURT AND THEY CERTIFIED THE CLASSES SO YOU

15   SHOULDN'T BE BOTHERED EITHER.

16       AND ALSO, WELL, WE DIDN'T SAY THAT WE WERE GOING TO DO IT

17   THIS WAY, BUT NOW WE'RE GOING TO DO IT WITH A CLAIMS FORM

18   PROCESS.

19       SO FIRST LET'S TALK ABOUT OUR RECORDS AND THE CREDITOR'S

20   RECORDS, AND THEN I WOULD LIKE TO GET INTO THE CLAIMS PROCESS.

21       SO OUR RECORDS DON'T SHOW HOW THE DEBTS WERE INCURRED.  WE

22   PURCHASED THE ACCOUNTS.  WE GET WHAT RECORDS WE CAN, BUT REALLY

23   THE CREDIT CARD IS A GREAT EXAMPLE.  HOW WOULD ANYONE KNOW JUST

24   FROM LOOKING AT THE STATEMENTS HOW THESE DEBTS WERE INCURRED.

25   THERE ARE SO MANY DIFFERENT WAYS.

1          THE COURT:  WELL, SURE.  GOING TO THE GAS STATION OR

2     GOING TO LUNCH, I JUST -- I CAN'T SAY WHETHER THAT'S BUSINESS.

3     IF YOU RUN A DBA THAT IS NOT A CORPORATION, YOU'D HAVE A

4     PERSONAL CREDIT CARD AND YOU COULD BE BUYING SUPPLIES FOR THE

5     FLOWER SHOP THAT YOU'RE JUST RUNNING AS MARY'S FLOWER SHOP OR,

6     YOU KNOW, MARY'S GARDENING SERVICE.  YOU COULD BE BUYING

7     FERTILIZER AT ORCHARD SUPPLY.

8          MR. NARITA:  THEY ARE ONE OF THE MOST VERSATILE

9     THINGS ON THE PLANET AND ALSO CASH ADVANCES IS A REALLY

10    COMPLICATED ISSUE BECAUSE NO ONE KNOWS WHEN THEY USE THE CASH

11    ADVANCE.

12         AND WE CITED IN OUR BRIEFS THAT A LOT OF STATE GOVERNMENTS

13    AND FEDERAL GOVERNMENTS ALLOW YOU TO PAY YOUR TAXES AND TAXES

14    ARE NOT COVERED BY THE FDCPA AND CHILD SUPPORT AND ANY KIND OF

15    FINE, AND IT'S NOT JUST BUSINESSES.  THERE IS A MYRIAD OF

16    DIFFERENT TYPES OF DEBTS THAT ARE NOT COVERED.

17         SO OUR RECORDS DON'T SHOW THAT AND THAT'S UNDISPUTED AND

18    THEY HAVE NOT ACTUALLY CLAIMED THAT OUR RECORDS DO.  THEY JUST

19    SAID SHAME ON US IF THEY DON'T.

20         THE NINTH CIRCUIT DOES NOT REQUIRE US -- THE NINTH CIRCUIT

21    OR THE FDCPA, THERE'S NO REQUIREMENT THAT WE MAINTAIN DETAILED

22    RECORDS OF THE DEBT, AND THERE'S CERTAINLY NO REQUIREMENT THAT

23    WE RETAIN ENOUGH RECORDS TO SHOW HOW AND WHY EACH PERSON

24    INCURRED THE DEBT THAT THEY DID.

25         THE COURT:  WELL, YOU KNOW, AT FIRST I WAS -- I FELT

1    IT WAS COMPELLING, THE ARGUMENT THAT DEFENDANT SHOULD NOT BE

2    ABLE TO AVOID A CLASS ACTION BY INTENTIONALLY KEEPING BAD

3    RECORDS.  I THINK THAT'S A VERY APPEALING ARGUMENT, BUT THAT

4    ARGUMENT IS NOT BORNE OUT IF THERE'S NO REQUIREMENT TO KEEP THE

5    RECORDS.

6         AND SO IT CERTAINLY IS NOT YOUR JOB TO MAKE THE CASE EASY

7    FOR YOUR OPPONENT.  IT'S YOUR JOB TO FOLLOW THE LAW.  AND IF

8    THE LAW DOES NOT PROVIDE A DUTY TO YOU TO MAINTAIN THE

9    UNDERLYING RECORDS THAT WOULD ESTABLISH ESSENTIALLY WHAT WAS

10   PURCHASED, I MEAN, YOU WOULD SHOW WHETHER IT WAS A COMMERCIAL

11   ACCOUNT OR A PERSONAL ACCOUNT, AND BEYOND THAT I DON'T KNOW

12   WHAT YOUR RECORDS WOULD HAVE.

13             MR. NARITA:  WELL, OF COURSE, FROM MY PERSONAL

14   EXAMPLE I HAVE AN AMERICAN EXPRESS CARD, WHICH IS ALL I USE,

15   AND IT'S MY PERSONAL CARD.  AND THE VAST MAJORITY OF MY

16   EXPENSES ARE THE EXPENSES THAT I HAVE FOR THE BUSINESS BECAUSE

17   I OWN THE FIRM, AND I'M THE OWNER.

18        SO IF YOU GO BACK AND GO THROUGH EACH ONE, I WOULD HAVE TO

19   TESTIFY UNDER OATH THAT I DON'T KNOW, BUT IF SOMEONE ASKED ME

20   WHAT IS MY BEST ESTIMATION I WOULD HAVE TO SAY BUSINESS, AND

21   THAT'S THE BULK.

22             THE COURT:  WELL, THE MATIN COURT WAS VERY CLEAR

23   THAT MERELY STATING IT WAS A CREDIT CARD IN AN INDIVIDUAL NAME

24   WAS NOT ENOUGH ON A SUMMARY JUDGMENT STANDARD WHERE ALL

25   INFERENCES, IF EVIDENCE TO SUPPORT IT WILL BE DRAWN IN FAVOR OF

1    THE OPPOSING PARTY.

2        SO THAT WAS A -- YOU KNOW, I DON'T WANT TO READ TOO MUCH

3    INTO THAT CASE, BUT IT WAS AN INTERESTING EXPLANATION AS TO HOW

4    THE EVIDENCE IS PERCEIVED, AND, OF COURSE, I CAN ONLY IMAGINE

5    THE SUMMARY JUDGMENT MOTION IN THIS CASE, BUT WE'RE NOT THERE

6    YET.

7            MR. NARITA:  AND, YOUR HONOR, VERY BRIEFLY, BECAUSE

8    I WANT TO GO TO THE CLAIMS FORM.

9            THE COURT:  YES.

10           MR. NARITA:  VERY BRIEFLY.  YOU ALREADY POINTED OUT,

11   THERE'S NO EVIDENCE OF THE CREDITOR'S RECORD.  THEY HAVEN'T

12   SUBPOENAED THE RECORDS, AND I DON'T THINK IT'S A USEFUL OR AN

13   APPROPRIATE EXERCISE TO SAY, WELL, LET'S REOPEN DISCOVERY AND

14   SEND A SUBPOENA TO HSBC FOR 43,000 DIFFERENT ACCOUNTS AND SORT

15   THROUGH THE RESULTS AND SEE IF WE CAN DISCERN CLASS MEMBERS

16   FROM THAT.

17           THE COURT:  YOU KNOW, I DIDN'T ACTUALLY HAVE TROUBLE

18   WITH THE NUMEROSITY ISSUE.

19       I THINK ONE COURT SAID COMMON SENSE WOULD SAY THAT MANY,

20   MANY OF THESE CREDIT CARD ACCOUNTS WOULD BE PERSONAL ACCOUNTS.

21       YOU KNOW, I THINK -- I WASN'T GOING TO GET HUNG UP ON THAT

22   ISSUE.  I THINK YOU DID ARGUE IT, BUT I DON'T REMEMBER THE CASE

23   NAME.  I'M SORRY.  I READ A LOT OF CASES, BUT I REMEMBER THE

24   FACT SITUATION.

25       IT'S REALLY MAKING SURE THAT QUALIFIED PEOPLE ARE IN THE

1    CLASS WHO CAN RECEIVE PAYMENT SHOULD THE PLAINTIFF PREVAIL ON

2    THE MERITS OF THE CASE.  THAT'S A CONCERN.

3              MR. NARITA:  I AGREE, THERE'S CASE LAW THAT SUGGESTS

4    THAT YOU DON'T HAVE TO COUNT EVERY CLASS MEMBER DOWN TO THE

5    LAST ONE AS LONG AS THERE IS RELIABLE EVIDENCE THAT THEY'RE

6    NUMEROUS, THEN YOU CAN GET THAT PASSED 23(A)(1).

7              THE COURT:  YES.

8              MR. NARITA:  SO NOW THE CLAIMS PROCESS.  SO TO

9    ILLUSTRATE WHY THE CLAIMS PROCESS WOULDN'T WORK, I REALLY THINK

10   THE BEST PLACE TO START WITH IS WITH MS. GOLD'S TESTIMONY IN

11   THIS CASE.

12       AND, YOUR HONOR, WE CAN DO THIS LITERALLY WITH THREE

13   PIECES OF PAPER, AND I CAN TELL THE COURT WITH THREE PIECES OF

14   PAPER.

15             THE COURT:  OKAY.

16             MR. NARITA:  AND MAYBE -- IT MAY BE FOUR.  I

17   UNDERESTIMATE.

18             THE COURT:  A FEW.

19             MR. NARITA:  I UNDERESTIMATE.

20             THE COURT:  SO I HAVE EVERYTHING THAT YOU SUBMITTED

21   AND THERE WERE EXHIBIT LETTERS.

22             MR. NARITA:  SO THE THREE PIECES OF THE RECORD THAT

23   I THINK WE CAN DO THIS WITH ARE HER DEPOSITION, A FEW PAGES OF

24   HER DEPOSITION TRANSCRIPT WHICH WERE ATTACHED TO MY

25   DECLARATION.

1          THE COURT:  YES, I HAVE THAT.

2          MR. NARITA:  AND SO IF YOU TURN TO PAGE 49 OF HER

3    DEPOSITION TRANSCRIPT.

4          THE COURT:  LET ME GO THERE RIGHT NOW.

5          MR. NARITA:  AND ONCE YOU HAVE THAT, I'LL TELL YOU

6    ONE OTHER PIECE OF PAPER WE CAN LOOK AT.

7          THE COURT:  ALL RIGHT.  I HAVE PAGE 49.

8          MR. NARITA:  YOUR HONOR, ONE OTHER PIECE OF PAPER WE

9    CAN LOOK AT, YOUR HONOR, IS MS. GOLD, HERSELF, SUBMITTED THE

10   DECLARATION IN SUPPORT OF THE MOTION, AND IT'S 58-2 OF THE

11   RECORD.

12         THE COURT:  I SHOULD HAVE THE RECORD DECLARATION.

13   NOW LET'S SEE IF I CAN GET MY FINGERS ON IT.

14         MR. NARITA:  IT'S PRETTY SHORT.  DOCKET 58-2 AND THE

15   PARAGRAPH THAT I'D BE LOOKING AT IS PARAGRAPH 4.

16         THE COURT:  SO I HAVE HER DECLARATION, YES.

17         MR. NARITA:  OKAY.  SO NOW -- SO LET'S START WITH

18   THE DEPOSITION TESTIMONY AND I CAN -- WE CAN READ IT TOGETHER

19   BECAUSE IT'S SHORT, BUT I CAN SUMMARIZE.

20      AND BASICALLY WHAT HAPPENS BETWEEN PAGE 49 AND 51 IS I'M

21   SHOWING MS. GOLD HER -- ONE OF HER CREDIT CARD STATEMENTS.  SHE

22   ACTUALLY HAS RETAINED --

23         THE COURT:  SHE HAS STATEMENTS.

24         MR. NARITA:  SO I MARKED ONE OF THE LAST ONES

25   THAT -- OUT THERE THAT SHE HAD, THE MOST RECENT STATEMENT THAT

1    SHE HAD, AND WHAT I'M DOING IN THIS PART OF THE DEPOSITION, IS

2    I'M POINTING OUT TO HER THAT HER BALANCE IS MADE UP OF TWO

3    THINGS.  IT'S MADE UP OF PURCHASES, WHICH ARE -- ADD UP TO

4    SLIGHTLY OVER $1,400, $1400.02.  AND I POINT OUT TO HER THAT

5    THERE ARE SOME CASH ADVANCES IN HER CREDIT CARD BALANCE THAT

6    ADD UP TO $618.76.

7         AND SO I ASKED HER AT DEPOSITION, CAN YOU TELL ME ABOUT

8    THE PURCHASES, AND THEN I ASKED HER ABOUT THE CASH ADVANCES.

9         AND, YOU KNOW, WE CAN READ SOME OF THIS BECAUSE IT'S

10   FAIRLY SHORT.  IF YOU -- I'LL START, IF YOUR HONOR PERMITS, AT

11   THE BOTTOM OF PAGE 49.

12        AND I SAY, "OKAY.  CAN YOU LIST FOR ME THE PURCHASES THAT

13   WERE MADE THAT COMPRISE THAT $1414.02 BALANCE?

14        AND SHE SAYS, "I CAN TELL YOU IN A GENERAL MANNER, NOT

15   SPECIFICALLY."

16        "QUESTION:  OKAY.  CAN YOU LIST ANY OF THE SPECIFIC

17   PURCHASES THAT MAKE UP THAT BALANCE?

18        "ANSWER:  I CAN RECALL USING IT AT THE HAIR DRESSER, AT

19   LABELLE SPA, AT WHOLE FOODS MARKET.  THAT'S ALL I CAN THINK

20   OF."

21             THE COURT:  SO SHE DIDN'T HAVE HER MONTHLY

22   STATEMENT.  SHE JUST HAD A STATEMENT OF PAST DUE?

23             MR. NARITA:  SHE HAD ONE OF HER STATEMENTS -- THERE

24   WERE OTHERS THAT WERE AVAILABLE TO HER THAT SHE HAD.

25             THE COURT:  SO SHE HAD ONE MONTHLY STATEMENT?

1    BECAUSE A MONTHLY STATEMENT WOULD TELL YOU WITH REASONABLE

2    SPECIFICITY WHERE YOU SHOPPED.

3         MR. NARITA:  RIGHT.

4         THE COURT:  AND NOT WHAT YOU PURCHASED NECESSARILY.

5         MR. NARITA:  RIGHT.  AND AT THIS POINT WE'RE ONLY

6    LOOKING AT ONE OF THEM.

7         THE COURT:  OKAY.

8         MR. NARITA:  THERE WERE OTHER ONES THAT WERE -- THAT

9    SHE HAD PRODUCED, BUT AT THIS POINT WE'RE ONLY LOOKING AT ONE

10   OF THEM.

11        AND I SAID, "OKAY.  SO YOU'RE JUST DESCRIBING GENERALLY

12   THE PLACES THAT YOU REMEMBER USING YOUR ORCHARD CREDIT CARD;

13   CORRECT?

14        "ANSWER:  YES.

15        "QUESTION:  ARE YOU SURE?  CAN YOU TESTIFY UNDER OATH THAT

16   THOSE WERE THREE OF THE TRANSACTIONS THAT MAKE UP THIS $1,400

17   BALANCE?

18        "ANSWER:  YES.

19        "QUESTION:  OKAY.  DO YOU REMEMBER THE DATES THAT YOU

20   SHOPPED THERE?

21        "ANSWER:  NO.

22        "QUESTION:  OKAY.  ANYTHING ELSE THAT YOU CAN REMEMBER

23   THAT MAKES UP THIS $1,400 BALANCE?

24        "ANSWER:  NO.

25        "DO YOU KNOW HOW MUCH YOU SPENT ON THOSE DAYS THAT YOU

1    JUST TESTIFIED TO?

2        "ANSWER:  NO.

3        "OKAY.  HOW ABOUT THE CASH ADVANCES.  "CAN YOU TELL ME

4    WHAT THAT MONEY WAS USED FOR, THE $618.76."

5        "ANSWER:  NO."

6            THE COURT:  SO LET ME JUST ASK YOU, ON A CASH

7    ADVANCE, IF A CONSUMER TAKES A CASH ADVANCE IN ORDER TO LOAN

8    AUNT MARY SOME MONEY, THAT WOULDN'T QUALIFY?

9            MR. NARITA:  IT DEPENDS ON WHAT SHE'S LOANING IT

10    FOR.

11            THE COURT:  IT DEPENDS ON WHAT AUNT MARY IS GOING TO

12    USE IT FOR?

13            MR. NARITA:  YES, IF SHE GETS A LOAN AND IT'S A

14    BUSINESS LOAN.  THAT'S ONE OF OUR NINTH CIRCUIT CASES.  AND IN

15    NINTH CIRCUIT IN, I BELIEVE IT WAS TURNER VERSUS COOK, AND THE

16    GUY SAYS, WELL, THIS WAS A FRIEND OF MINE WHO MADE ME THIS

17    LOAN.  SO IT'S A PERSONAL LOAN, AND HE WENT ALL OF THE WAY TO

18    THE NINTH CIRCUIT THINKING HE WAS RIGHT UNTIL THEY TOLD HIM,

19    NO.  YOU TOOK THE FUNDS AND YOU INVESTED IN A BUSINESS AND THAT

20    MADE IT -- THAT'S THE PURPOSE FOR WHICH YOU USED THOSE FUNDS.

21        SO TO BE FAIR, SHE ONLY HAD THE ONE STATEMENT AVAILABLE TO

22    HER, RIGHT?  BUT THAT'S LESS THAN THE CLASS MEMBERS WOULD HAVE

23    IF THEY'RE JUST CHECKING -- EXCUSE ME -- THAT'S SIGNIFICANTLY

24    MORE THAN THE CLASS MEMBERS WOULD HAVE.

25            THE COURT:  RIGHT.

1      MR. NARITA:  NOW, LET'S LOOK AT HER DECLARATION.  SO

2  PARAGRAPH 4 OF HER DECLARATION, WHICH OBVIOUSLY WAS SUBMITTED

3  AFTER SHE TESTIFIED, NOW SHE REMEMBERS A LITTLE BIT MORE, BUT

4  IT'S STILL NOT ENOUGH.

5      PARAGRAPH 4 SAYS THE DEBT THAT THE DEFENDANT SOUGHT TO

6  COLLECT FROM ME WAS INCURRED PRIMARILY FOR PERSONAL, FAMILY OR

7  HOUSEHOLD PURCHASES.

8      SPECIFICALLY, THE DEBT WAS INCURRED TO PURCHASE HOUSEHOLD

9  CLEANING SUPPLIES, CONSUMER ELECTRONICS, POSTAGE, GROCERIES,

10  ENTERTAINMENT, SPA TREATMENTS, PERSONAL GROOMING, AUTOMOBILE

11  SERVICES AND REPAIRS AND PET FOOD AND THEN, ET CETERA.

12      THE COURT:  YOU KNOW, I WILL ONLY MENTION TO

13  MR. ROULSTON THAT THAT PARAGRAPH IS FINE.

14      WHEN I GOT TO PARAGRAPH 6 AND YOUR CLIENT IS SIGNING UNDER

15  OATH A PARAGRAPH THAT USES THE TERM INTER ALIA, I KNEW THAT SHE

16  DIDN'T WRITE THIS AND THAT BOTHERED ME.

17      AND MY -- UNLESS MAYBE YOU SAT DOWN WITH HER AND DESCRIBED

18  TO HER WHAT THAT MEANS BUT THIS -- THESE KIND OF CONCLUSORY

19  TERMS IN PARAGRAPH 4 GIVE ME GREAT PAUSE.

20      NOW, I'M NOT SCRUTINIZING THIS THE WAY A JURY WOULD IF IT

21  WERE TESTIMONY AT TRIAL OR IF I WERE LOOKING AT SUMMARY

22  JUDGMENT, BUT JUST FAIR WARNING THAT THAT JUST JUMPED -- OF

23  COURSE, IT IS ITALICIZED, WHICH IS APPROPRIATE FORM, JUMPED OFF

24  THE PAGE AT ME AS SAYING THIS IS A LAWYER DECLARATION.  I'M NOT

25  WEIGHING CREDIBILITY TODAY.  I WANT TO BE REALLY CLEAR ABOUT

```
 1      THAT.
 2                  MR. ROULSTON:  JUST TO RESPOND BRIEFLY TO THAT, YOUR
 3      HONOR.  THE FACT THAT A CONSUMER MAY NOT NECESSARILY BE AN
 4      ATTORNEY DOES NOT NECESSARILY MEAN A CONSUMER IS STUPID.
 5                  THE COURT:  I DIDN'T SAY THAT.  THAT IS A LEGAL TERM
 6      THAT LAWYERS USE.  I BELIEVE THAT SHE MAY BE A PARALEGAL.
 7                  MR. ROULSTON:  SHE WAS A PRIVATE INVESTIGATOR FOR
 8      20 YEARS, AND SHE EVEN WORKED FOR MR. NARITA'S FIRM AT ONE
 9      TIME.  SHE MAY BE A LAYPERSON, BUT SHE'S NOT AN UNSOPHISTICATED
10      LAYPERSON.
11                  THE COURT:  SO YOU'RE TELLING ME SHE WROTE THIS WITH
12      HER OWN HAND?
13                  MR. ROULSTON:  I'M NOT SAYING THAT EITHER, BUT I
14      DON'T KNOW IF IT SHOULD GIVE THE COURT ANY PAUSE.  DECLARATIONS
15      SHOULD BE REVIEWED BY THE ATTORNEY AND THE DECLARANT.
16                  THE COURT:  YES.
17                  MR. ROULSTON:  FOR GRAMMAR AND SPELLING AND ALL OF
18      THAT STUFF.
19          SO I JUST WANT TO MAKE SURE THAT THE COURT IS NOT HAVING
20      ANY QUALMS ABOUT THAT BECAUSE THE CLIENT HERSELF DIDN'T, YOU
21      KNOW, WRITE IT OUT BY HAND AND MISSPELL EVERYTHING.  I DON'T
22      THINK THAT IS AN ISSUE HERE.
23                  THE COURT:  I DIDN'T SAY SHE NEEDED TO MISSPELL
24      EVERYTHING.  I'M SURE SHE'S A VERY INTELLIGENT WOMAN.  I'M JUST
25      LOOKING AT TERMS THAT MANY LAWYERS DON'T EVEN USE.  SO THAT'S
```

```
1     MY COMMENT.

2              MR. NARITA:  SO PARAGRAPH 4, I'M NOT SAYING THAT

3     THIS PARAGRAPH DIRECTLY CONFLICTS WITH HER TESTIMONY BECAUSE

4     SHE DOES MENTION SOME OF THE SAME THINGS THAT SHE TESTIFIED

5     ABOUT.

6              THE COURT:  UH-HUH.

7              MR. NARITA:  BUT IT'S CLEAR THAT SHE SOMEHOW

8     REMEMBERED MORE THINGS.

9              THE COURT:  IS THE WHOLE AMOUNT OF HER DEBT THE 1400

10    PLUS 6?

11             MR. NARITA:  YEAH.

12             THE COURT:  HER PARTICULAR, IS THAT SMALLER?

13             MR. NARITA:  YEAH.

14             THE COURT:  OKAY.  SO WHEN YOU ASKED HER IN THE

15    DEPOSITION ABOUT THE $1,400, THAT INCLUDED EVERYTHING?

16             MR. NARITA:  THAT INCLUDED ALL OF THE PURCHASES.

17             THE COURT:  PURCHASES.

18             MR. NARITA:  AND THEN I ASKED HER SEPARATELY ABOUT

19    CASH ADVANCES AND SHE HAD NO IDEA.

20             THE COURT:  UNDERSTOOD.  AND THE LAW REQUIRES THAT

21    IT BE PRIMARILY?

22             MR. NARITA:  PRIMARILY.

23             THE COURT:  AND IS THAT DEFINED ANYWHERE, MORE THAN

24    HALF?

25             MR. NARITA:  MORE THAN HALF.
```

1     THE COURT:  OKAY.

2     MR. NARITA:  AND SO IF SHE DOESN'T KNOW HOW MUCH SHE

3 IS SPENDING ON THESE PARTICULAR ITEMS, AND HOW MUCH OF THAT

4 AMOUNT CAN BE ATTRIBUTED TO THAT FINAL BALANCE THAT WE'RE

5 SEEKING TO COLLECT.

6     THE COURT:  BECAUSE I DON'T EVEN KNOW OVER WHAT

7 PERIOD OF TIME THE DEBT WAS INCURRED.

8     MR. NARITA:  THAT'S RIGHT.

9     THE COURT:  BECAUSE, FRANKLY, YOU COULD SAY

10 GROCERIES AND IT WOULDN'T TAKE VERY LONG TO SPEND 1400 ON

11 GROCERIES, I DON'T KNOW IF SHE HAS A FAMILY OR NOT, BUT EVEN IF

12 SHE'S BUYING FOR HERSELF, WE ALL KNOW THAT THAT THAT GROCERY

13 BASKET IS PRETTY EXPENSIVE THESE DAYS.

14     MR. NARITA:  AND I WOULD ALSO POINT OUT THAT SHE

15 DOESN'T SPECIFICALLY SAY, IN PARAGRAPH 4 EVEN, ANYTHING

16 SPECIFICALLY ABOUT THE CASH ADVANCES.

17     THE COURT:  NO.

18     MR. NARITA:  SHE DOESN'T SAY, WELL, THE CASH

19 ADVANCES WERE USED FOR THE SPA TREATMENT OR WHATEVER.

20    AND, FRANKLY, I DON'T BLAME HER.  I THINK IT WOULD BE VERY

21 DIFFICULT FOR SOMEONE, AS THE COURT MENTIONED, TO REMEMBER.

22     THE COURT:  WELL, LET'S BE CLEAR THOUGH, I'M NOT

23 DETERMINING WHETHER SHE CAN PROVE THE NATURE OF THE DEBT NOW.

24    AND THAT IS A MERITS DETERMINATION THAT I AM NOT MAKING.

25 I AM LOOKING AT THIS TO GET AN UNDERSTANDING OF THE COMPLEXITY

1   OF ASCERTAINING THE CLASS MEMBERS, AND THAT'S ALL.

2       AND, IN FACT, FOR THIS MOTION ESSENTIALLY TAKES THIS AS

3   TRUE.  AND SHE CLEARLY IS IN PARAGRAPH 4 IDENTIFYING THE KINDS

4   OF GOODS.  I DON'T THINK -- AND SERVICES.  THERE ARE SOME

5   SERVICES HERE THAT WOULD QUALIFY.

6       AND IT'S A SMALL -- IT'S A SMALL AMOUNT OF MONEY, $1,400.

7       AND SO ALTHOUGH HER DEPOSITION TESTIMONY MIGHT RAISE THE

8   QUESTION OF WHETHER THE $1,400 WAS INCURRED FOR THOSE LISTED

9   THINGS, I DON'T THINK IT'S IMPLAUSIBLE THAT PARAGRAPH 4 COULD

10  COVER, I SAY, GROCERIES ALONE COULD COVER IT.

11          MR. NARITA:  FAIR ENOUGH, YOUR HONOR.  BUT IT --

12  AGAIN, I WENT THROUGH THIS EXERCISE SIMPLY TO ILLUSTRATE THE

13  COMPLEXITY OF THIS.

14          THE COURT:  YES.  WELL, SO LET'S LOOK AT THAT.

15      IF WE WERE -- WE CAN HAVE A SIMPLE QUESTION, AND WE CAN

16  CERTAINLY DEVELOP A CLAIM FORM THAT HOPEFULLY REDUCES THE

17  INCENTIVE FOR SOMEONE TO MISSTATE WHICH CATEGORY THEY FALL IN.

18  AND THEN THE QUESTION IS WHAT, IF WE -- I DON'T CERTIFY A CLASS

19  ONLY TO INVITE A DECERTIFICATION.  THAT'S JUST NOT THE WAY

20  WE'RE GOING TO DO IT.  IT'S NOT FAVORED IN THE LAW.

21      THERE'S NOT GOING TO BE ANY MORE FACT DISCOVERY, EXCEPT

22  WHAT MR. ROULSTON INDICATED HAD BEEN PRESERVED, BUT NOT THE

23  KIND OF TREMENDOUS FACT DISCOVERY ON EACH OF THE 43,000 FILED.

24  THE TIME HAS COME AND GONE FOR THAT.  I'M NOT SAYING THAT YOU

25  CAN'T BRING A MOTION TO REOPEN DISCOVERY, BUT IT DOESN'T APPEAR

1    THAT THAT'S PENDING.

2         I'M JUST NOT SURE WHAT OBLIGATION THE COURT WILL THEN HAVE

3    TO THE DEFENDANTS OR THE DEFENDANTS WILL ASSERT IF YOU LOSE ON

4    LIABILITY AND WHAT OBLIGATION YOU'LL HAVE AT THE DAMAGES PHASE

5    AND THE CLAIMS PHASE.

6              MR. NARITA:  YEAH, I MEAN -- THE POINT THAT WE MADE

7    IN OUR BRIEFS, YOUR HONOR, IS I THINK THAT WOULD BE -- IT WOULD

8    BE HIGHLY INAPPROPRIATE TO DO A CHECK THE BOX HERE BECAUSE

9    YOU'RE ESSENTIALLY STRIPPING US OF OUR ABILITY TO DEFEND

10   AGAINST THE CLAIMS.

11        AND I DO THINK THAT THE DUKES CASE TALKS TO THIS.  IN

12   DUKES, THE PART OF DUKES THAT WE REFER TO, IT WAS THE PART OF

13   THE DECISION THAT RELATED TO A VERY FACTUALLY INTENSIVE PART OF

14   THE CLAIMS THAT THE CLASS CLAIMS THAT THE PLAINTIFFS WERE

15   TRYING TO PURSUE, WHETHER OR NOT CERTAIN CLASS MEMBERS WERE

16   ENTITLED TO BACKPAY.

17        IT WAS ALL OF THIS STUFF THAT THERE WAS GOING TO BE A LOT

18   OF WAYS TO DEFEND AGAINST THOSE CLAIMS THAT WERE FACT

19   INTENSIVE.

20        AND THE COURT SAID, LOOK, YOU CANNOT CERTIFY A CLASS IN A

21   MANNER THAT IS ESSENTIALLY GOING TO STRIP THE DEFENDANT OF

22   THEIR ABILITY TO DEFEND.

23        AND IF YOU --

24              THE COURT:  RIGHT.

25              MR. NARITA:  -- AND IF YOU GIVE EVERYONE A BOX, NO

1    MATTER HOW DETAILED IT IS, AND YOU SAY, I SAY UNDER PENALTY OF

2    PERJURY THAT THIS WAS MY DEBT, WELL, GEES, YOUR HONOR, WHAT IF

3    THAT HAD HAPPENED IN TURNER VERSUS COOK OR SCHLENK VERSUS

4    TRANSWORLD OR THE BLOOM CASE OR ANY OF THE OTHER MYRIAD OF

5    CASES WHERE PEOPLE HAVE GONE ALL OF THE WAY TO THE NINTH

6    CIRCUIT OR OTHER COURTS OF APPEALS AND LOST BECAUSE IT TURNED

7    OUT THAT, IN FACT, THEY DID NOT HAVE A DEBT THAT WAS COVERED BY

8    THE ACT.

9         THE COURT:  RIGHT.  AND THE NINTH CIRCUIT MAKES IT

10   CLEAR THAT THE DETERMINATION OF THE TYPE OF DEBT IS A THRESHOLD

11   ISSUE, BUT THAT'S FOR MS. GOLD TO PROVE AS THE CLASS REP.

12        AND THERE'S A DIFFERENT STANDARD FOR THE CLAIMS BY THE

13   CLASS MEMBERS.  SHE DOES -- THAT WILL BE HER THRESHOLD ISSUE TO

14   PROVE.

15        MR. ROULSTON:  RIGHT.  AND, YOUR HONOR, JUST TO

16   BRIEFLY ADDRESS THIS DUKES ISSUE.  WE TALKED AGAIN -- YOU KNOW,

17   I'M SORRY MY ORATORY HERE TODAY IS NOT, YOU KNOW, LIKE

18   CAESAR-AL (SIC) BUT WE REALLY TRIED TO BRIEF THIS PROPERLY.

19   AND I REALLY ENCOURAGE THE COURT LEAN ON THE PAPERS AND NOT

20   NECESSARILY MY FUMBLING AROUND.

21        THE COURT:  YOU'RE NOT FUMBLING AROUND.

22        MR. ROULSTON:  ON PAGE 6 OF THE REPLY WE TALK

23   SPECIFICALLY ABOUT WHY THE DUKES CASE DOES NOT APPLY HERE, AND,

24   IN FACT, WE CITE TO TWO CASES IN THIS CIRCUIT THAT WENT OUR

25   WAY.

1            THE COURT:  THAT ARE POST-DUKES.

2            MR. ROULSTON:  RIGHT.  AND CITE TO DUKES

3    APPROVINGLY.

4            THE COURT:  RIGHT.  AND WHEN I THINK ON THAT ISSUE,

5    I THINK DUKES WAS DECIDED IN THE EMPLOYMENT ARENA, WHICH IS

6    EXTRAORDINARILY DIFFERENT THAN THE FAIR DEBT COLLECTIONS

7    PRACTICES ACT, AND I CLEARLY HAVE A CONGRESSIONAL INTENTION

8    EXPRESSED IN THE ACT THAT --

9            MR. NARITA:  MAY I ADDRESS THAT, YOUR HONOR?

10           THE COURT:  YES.

11           MR. NARITA:  I HATE TO INTERRUPT.

12           THE COURT:  NO, PLEASE.

13           MR. NARITA:  BECAUSE THAT ALWAYS SENDS A LITTLE

14    CHILL UP MY SPINE.

15           THE COURT:  OKAY.

16           MR. NARITA:  AND HERE'S WHY.  IF YOU READ THE FDCPA,

17    I ENCOURAGE THE COURT TO READ SUBSECTION K.

18           THE COURT:  IN FACT, I HAVE A COPY OF IT RIGHT HERE.

19           MR. NARITA:  THERE IS NOTHING -- I WOULD SUBMIT

20    THAT, AND PLEASE DON'T LET THIS SOUND FACETIOUS, I'M ABSOLUTELY

21    BEING SERIOUS, I WOULD SUBMIT THAT CONGRESS WAS A BIT HOSTILE

22    TO FDCPA CLASS ACTIONS.  AND WHY DO I SAY THAT?  WHY DO I SAY

23    THAT?  IT SOUNDS CRAZY, RIGHT?

24       WELL, THERE'S NOTHING IN THE ACT WHERE CONGRESS SAYS THAT

25    YOU GET THIS.

1      WHAT CONGRESS DOES IS PLACE TWO VERY SIGNIFICANT

2   LIMITATIONS ON THE DAMAGES THAT YOU CAN GET IF YOU MEET RULE

3   23'S REQUIREMENTS.  VERY SIGNIFICANT LIMITATIONS.

4      THE FIRST LIMITATION, YOUR HONOR, IS THAT DAMAGES ARE

5   LIMITED TO THE LESSER OF 1 PERCENT OF THE NET WORTH OF THE DEBT

6   COLLECTOR OR $500,000.  SO YOU CAN'T HAVE A MULTIMILLION DOLLAR

7   FDCPA CLAIM.

8          THE COURT:  WELL, WE'RE NOT PUTTING COMPANIES OUT OF

9   BUSINESS.  THAT'S REALLY WHAT CONGRESS HAS SAID, AND THAT'S

10  WISE.

11         MR. NARITA:  AND THE SEVENTH CIRCUIT SAID IN

12  SAUNDERS IS THAT'S WHY THE CAP WAS PUT IN THERE TO PREVENT

13  PEOPLE FROM --

14         THE COURT:  OF COURSE.

15         MR. NARITA:  AND THEN THE SECOND SIGNIFICANT

16  LIMITATION THAT CONGRESS PUT ON WAS THAT 1 PERCENT IS THE MAX.

17  THAT'S NOT WHAT YOU GET.

18      AND THEN YOU START LOOKING AT A FIVE FACTOR TEST THAT THE

19  COURT, OR THE TRIER OF FACT, WHOEVER IT IS, IS TO BALANCE, TO

20  DECIDE HOW MUCH OF THAT 1 PERCENT IS AWARDABLE TO THE CLASS, IF

21  ANY.

22         THE COURT:  I DON'T CONSIDER THAT HOSTILITY.  I

23  CONSIDER THAT A WISE CONGRESS KEEPING -- LEGISLATING WITH

24  PROPORTIONALITY IN MIND THAT THIS IS AN IMPORTANT CONSUMER

25  ISSUE, BUT BUSINESSES SHOULD NOT BE PUT OUT OF BUSINESS BECAUSE

1    OF THESE WRONGS BECAUSE THE ACTUAL HARM MAY NOT BE SO

2    SIGNIFICANT AND THAT THE ACTUAL HARM VARIES CASE BY CASE SO

3    JUDGES WHO WILL BE IN THE UNIQUE POSITION OF UNDERSTANDING THE

4    FACTS OF THE PARTICULAR CASE CAN DETERMINE WHAT AMOUNT OF HARM

5    THERE HAS BEEN TO THE CONSUMER AND DEVISE AN APPROPRIATE AWARD.

6         SO I DON'T CONSIDER THAT HOSTILITY.  I CONSIDER IT

7    REASONED.

8              MR. NARITA:  SO FAIR ENOUGH.  HOSTILITY IS MY

9    DEFENSE ATTORNEY TALKING, YOUR HONOR.  HOWEVER, I THINK IT'S A

10   FAR CRY FROM SAYING THAT CONGRESS HAS SPECIFICALLY SAID THAT

11   FDCPA CLASSES OUGHT TO BE CERTIFIED.  THEY HAVE TO SATISFY RULE

12   23.  YOU WOULD NOT ELIMINATE FDCPA CLASS ACTIONS IF I'M RIGHT

13   BECAUSE THERE ARE A WHOLE POOL OF DEBT THAT CAN ONLY BE

14   PERSONAL, FAMILY OR HOUSEHOLD BY THEIR VERY NATURE, FOR

15   EXAMPLE, MEDICAL DEBTS.

16        NO DEFENSE ATTORNEY IN THEIR RIGHT MIND IS GOING TO COME

17   UP AND SAY, OH, ALL OF THESE DEBTS THAT WERE INCURRED IN AN

18   EMERGENCY ROOM WERE BUSINESS DEBTS.  I MEAN, YOU KNOW, BY THEIR

19   VERY NATURE, THEY ARE.

20             THE COURT:  BUT WHAT HAPPENS WHEN THE CONSUMER WHIPS

21   OUT THEIR CREDIT CARD IN THE EMERGENCY ROOM BECAUSE THAT'S THE

22   ONLY WAY THAT THEY CAN PAY?

23             MR. NARITA:  NOW YOU'RE TALKING ABOUT THE CONSUMER

24   CREDIT CARD.

25             THE COURT:  RIGHT.  AND YOU HAVE ALL OF THE PROBLEMS

1    THIS IS CONSUMER A CREDIT CARD ESSENTIALLY OR MIXED IN WITH

2    BUSINESS OR COMMERCIAL CREDIT CARDS.

3              MR. ROULSTON:  MAYBE.

4              THE COURT:  MAYBE.  WE DON'T KNOW, AND I DON'T KNOW

5    HOW I'M GOING TO KNOW.  I MEAN, THAT'S --

6              MR. NARITA:  WHAT ABOUT A POOL OF STUDENT LOANS, FOR

7    EXAMPLE?  YOU HAVE A CLASS ACTION AGAINST SOMEONE WHO IS

8    COLLECTING STUDENT LOAN DEBTS, YOU KNOW.  I MEAN, YOU CANNOT

9    GET THESE THINGS -- IF YOU GET THEM, THE MONEY GOES, GENERALLY

10   SPEAKING, IT GOES DIRECTLY TO THE COLLEGES.

11       I MEAN, IT'S FOR A PERSONAL, FAMILY, HOUSEHOLD USE.  SO I

12   DON'T ACCEPT THE ARGUMENT.  AND THERE ARE OTHER WAYS, YOU KNOW,

13   WHERE A CLASS COULD BE STRUCTURED THAT AN FDCPA CASE COULD BE

14   CERTIFIED, BUT THIS IS -- THIS APPEARS TO BE -- AGAIN, WE DON'T

15   EVEN KNOW, BUT IT VERY LIKELY APPEARS TO BE A CLASS OF CREDIT

16   CARD ACCOUNT HOLDERS.  THAT'S, TO MY UNDERSTANDING, WHAT HSBC

17   BANK AND NEVADA N.A. WAS ISSUED.

18             THE COURT:  IT WASN'T CLEAR TO ME WHETHER THIS CLASS

19   WOULD INCLUDE PEOPLE WHO HAD A LINE OF CREDIT.  HSBC IS A BANK.

20   AND SO I DON'T KNOW WHO GOT THIS LETTER.

21       AND, MR. ROULSTON, I CERTAINLY APPRECIATE THAT THE COST OF

22   THE DISCOVERY THAT ONE MIGHT, SITTING IN MY CHAIR, WOULD

23   SUGGEST MIGHT BE OVERWHELMING AND NOT OF SUFFICIENT VALUE TO

24   THE PLAINTIFF TO UNDERTAKE.

25             MR. ROULSTON:  BUT, IF I MAY, YOUR HONOR?  WE'VE

1    GOTTEN SO FAR AFIELD THAT I FEAR WHAT WE MAY LOSE WHAT WE'RE

2    DOING HERE.

3                THE COURT:  OKAY.

4                MR. ROULSTON:  WHAT WE'RE DOING HERE IS THAT WE HAVE

5    A PLAINTIFF WHO HAS ALLEGEDLY THE DEFENDANTS SEND A LITTLE SHY

6    OF 44,000 FORM LETTERS TO THESE DEBTORS.

7                THE COURT:  UH-HUH.

8                MR. ROULSTON:  AND I CAN THINK OF NO OTHER BETTER

9    WAY THAN A CLASS ACTION TO DETERMINE WHETHER THIS LETTER

10   COMPLIES WITH THE FDCPA OR NOT.

11       ALL THIS STUFF THAT WE'RE TALKING ABOUT IS CLAIMS

12   ADMINISTRATION, AND I UNDERSTAND THE DEFENDANT'S CONCERN THAT,

13   WELL, PEOPLE MIGHT LIE.  BUT PEOPLE MIGHT LIE IN EVERY SINGLE

14   CLASS ACTION CASE WHERE THEY GET A FORM AND THAT'S, PERHAPS, A

15   BAD COMMENT ON HUMAN NATURE BUT THAT HAS NOTHING TO DO WITH

16   MS. GOLD AND HER FITNESS UNDER RULE 23.

17       AND, SIMILARLY, I THINK YOU CAN'T HAVE IT BOTH WAYS.  YOU

18   CAN'T SAY, WELL, WE DON'T EVEN BUY ALL OF THE RECORDS, WE JUST

19   GET SOME STUFF, BUT WE REALLY DON'T KNOW AND ON THE OTHER FOOT

20   TURN AROUND AND SAY, BUT WE'RE GOING TO -- WE'RE AT THE MERCY

21   OF THESE PEOPLE WHO ARE GOING TO LIE ABOUT THE PURCHASES.  WE

22   DIDN'T BUY THE RECORDS.

23                THE COURT:  LET'S REMEMBER WHO HAS THE BURDEN OF

24   PROOF.

25                MR. ROULSTON:  AND I UNDERSTAND THAT.

1      BUT IT'S AN ARGUMENT THAT SEEMS TO ESSENTIALLY SHIELD THE

2  DEBT COLLECTOR FROM THEIR PARTICULAR BUSINESS PRACTICE.

3      IF THERE ARE FALSE CLAIMS --

4          THE COURT:  IF YOU CAN SHOW ME A DUTY THAT THE DEBT

5  COLLECTOR HAS, I WILL HOLD THEM TO THAT LEGAL DUTY AND ALL OF

6  THE CONSEQUENCES.

7      ALL I HAVE NOW IS MR. NARITA'S CITATION TO THE CLARK CASE

8  THAT WOULD SUGGEST THAT THEY DON'T HAVE THAT DUTY.

9      SO THAT'S A CONCERN THAT I HAVE.

10         MR. ROULSTON:  AND I UNDERSTAND THAT.  AND IN THE

11  REPLY WE TALKED ABOUT, YOU KNOW, HOW COURTS HAVE VIEWED THIS

12  ARGUMENT THAT, WELL, WE DON'T HAVE THE RECORDS.

13         THE COURT:  RIGHT.  I KNOW.  I KNOW.

14      AND IT WAS MY FIRST REACTION, TOO, IS THAT THIS WOULD BE

15  THE TEXTBOOK ON HOW TO AVOID FDCPA CLASS ACTIONS, SHRED YOUR

16  RECORDS, DON'T KEEP THEM, AND YOU DON'T HAVE TO SO LET'S NOT

17  HAVE THEM.

18      ALL RIGHT.  I'LL HAVE TO GIVE SOME THOUGHT TO THE ISSUES.

19  YOU KNEW WHAT THE ISSUES WERE WHEN YOU BRIEFED IT.  THOSE ARE

20  THE ISSUES.

21      I WILL COMMENT, MR. ROULSTON, I DON'T SEE THIS AS A (B)(2)

22  CLASS BECAUSE YOU CAN'T GET INJUNCTIVE AND DECLARATORY RELIEF

23  UNDER THE ACT, AND JUDGE WHYTE HAS AN ORDER SIMILAR ON THE

24  GROUNDS, AND I'M BLANKING ON THE CASE.

25         MR. ROULSTON:  AND I'LL REFER THE COURT TO FOOTNOTE

1    45, THE LOVELY STRING CITE.

2              THE COURT:  IT'S JUDGE PALMER -- I MEAN, JUDGE

3    WHYTE'S CASE PALMER.

4              MR. ROULSTON:  AND I WOULD REFER THE COURT TO

5    FOOTNOTE 45, THE LOVELY STRING CITE ON THE FDCPA 23(B)(2).

6              THE COURT:  THOSE ARE COURTS WHO HAVE GRANTED IT,

7    AND I SAW THOSE AND LOOKED AT THOSE AND YOU CITE THEM

8    CORRECTLY, BUT I THINK JUDGE WHYTE ANALYZED THE LAW, AND THAT'S

9    WHERE I WOULD PROBABLY BE TOO.  AND I DON'T THINK THIS CASE

10   RISES AND FALLS ON WHETHER IT'S A (B)(2) OR (B)(3).

11             MR. ROULSTON:  I THINK (B)(3) IS MORE OR LESS FINE.

12   WE JUST WANTED TO SAY IT WAS A HYBRID CLASS.

13             THE COURT:  AND I DON'T EVEN KNOW THAT -- I MEAN,

14   YOU KNOW, IT WAS INTERESTING, AND I DON'T DECIDE MERITS NOW,

15   BUT THE DEFENDANT INDICATES THAT THE LETTER IS NO LONGER BEING

16   USED.  SO INJUNCTIVE RELIEF WOULD NOT EVEN BE APPROPRIATE.

17        I SAY YES AND NO BECAUSE AN INJUNCTION CAN IDENTIFY WHAT

18   WAS OFFENDING IN THE LETTER TO PREVENT THOSE PLAINTIFFS FROM

19   BEING USED IN FUTURE LETTERS AND EVEN IF THE EXACT LETTER

20   WASN'T BEING USED.

21        SO IT WAS A YES/NO.  I DON'T LOOK AT THE MERITS.  I JUST

22   DON'T THINK THAT DEC RELIEF IS AVAILABLE UNDER THE ACT.  THAT'S

23   ALL.

24             MR. ROULSTON:  AND TO THE EXTENT THE COURT

25   THOROUGHLY EXAMINES OUR BRIEFS, AND I'M SURE SHE WILL, THEN I

1    DON'T HAVE MUCH MORE TO SAY AND WE TRIED TO WRITE IT ALL DOWN.

2         THE COURT:  AND YOU DID AND I APPRECIATE THAT.

3         MR. NARITA:  ONE LAST THING BEFORE I GO.  I WANT TO

4    MAKE SURE -- I DON'T WANT TO REARGUE WHAT WE SAID, BUT I WANT

5    TO MAKE SURE THE COURT IS CLEAR ON OUR POSITION ON ADEQUACY.

6         THE COURT:  UH-HUH.

7         MR. NARITA:  SO WE DID MAKE SORT OF A MULTI-PRONG

8    ARGUMENT ON WHETHER MS. GOLD WAS AN INADEQUATE CLASS REP OR

9    NOT, AND WE TAKE THE POSITION THAT SHE WAS NOT.

10        WE DID THIS FOR A NUMBER OF REASONS, AND, ONE, WHICH I

11   WON'T HAVE TO REPEAT, THERE'S A SERIOUS QUESTION AS TO WHETHER

12   OR NOT SHE INCURRED A DEBT OR NOT, AND WE WENT THROUGH THAT.

13        SO I THINK THAT SHE'S SUBJECT TO THE DEFENSE AS TO WHETHER

14   OR NOT SHE HAS A CLAIM.

15        THE SECOND IS THAT SHE HAS A VERY BAD MEMORY AND IS NOT

16   CREDIBLE, I THINK, IN A WAY THAT REALLY MATTERS TO THIS CASE

17   AND THAT'S BECAUSE SHE -- AND THAT'S RELATED TO THE THIRD,

18   WHICH IS HER RELATIONSHIP TO MR. SCHWINN, WHO IS NOT HERE.

19        MS. GOLD BETWEEN THE 2010 AND 2012 WAS THE SUBJECT OF

20   MULTIPLE SETS OF COLLECTION EFFORTS FROM DIFFERENT CREDITORS

21   AND DIFFERENT COLLECTORS.

22        THROUGHOUT THIS ENTIRE TIME SHE TESTIFIED THAT SHE HAD

23   MR. SCHWINN BASICALLY AS HER REGULAR LAWYER.  HE WAS ON

24   ESSENTIALLY RETAINER FOR HER AND EVERYTHING THAT CAME IN, IF IT

25   WAS A LAWSUIT, IF IT WAS A LETTER, EVERYTHING FROM A COLLECTOR,

```
 1        SHE TURNED IT OVER TO HIM TO HANDLE.

 2            THROUGHOUT THAT PERIOD HE REPRESENTED HER IN MULTIPLE

 3     CASES AND DEFENDED HER IN CASES.  HE FILED LAWSUITS AGAINST

 4     COLLECTORS IN THIS COURTHOUSE ON HER BEHALF.

 5            ON THE MEMORY AND CREDIBILITY ISSUE, I THINK IT WAS JUST

 6     NOT CREDIBLE THAT SHE DIDN'T REMEMBER ANYTHING ABOUT THOSE

 7     CASES WITH MR. SCHWINN OR HOW THEY CAME OUT.

 8            I THINK SHE WAS, SHE WAS -- JUST WASN'T CREDIBLE ON THAT

 9     POINT.

10            IF SHE REALLY DOESN'T REMEMBER HOW ALL OF THESE LAWSUITS,

11     YOU KNOW, GOT THEMSELVES RESOLVED, THAT SHE WAS IN WITH THIS

12     SAME LAWYER OVER AND OVER AGAIN, THEN I THINK SHE HAS AN

13     INCREDIBLY BAD MEMORY PROBLEM.

14            IF SHE DOES REMEMBER AND WASN'T TELLING ME, I THINK SHE

15     HAS A CREDIBILITY PROBLEM.

16            THE LAST POINT, YOUR HONOR, IS THE GUERRERO POINT, WHAT

17     I'LL CALL THE GUERRERO POINT.

18            SO IN GUERRERO VERSUS RJM THE NINTH CIRCUIT LOOKED AT THE

19     SITUATION WHERE A COLLECTOR WROTE TO THE ATTORNEY FOR A DEBTOR

20     AND SAID IS THAT KIND OF LETTER SUBJECT TO THE FDCPA AND SAID

21     VERY RESOUNDINGLY, NO.

22            AND THE REASONING OF GUERRERO IS WHAT IS IMPORTANT HERE.

23     THE NINTH CIRCUIT TAKES A REALLY HOLISTIC LOOK AT WHY WAS THE

24     FDCPA PASSED?  WHAT IS IT DESIGNED TO DO AND WHAT WAS ITS

25     POLICY?
```

1    AND WHAT IT WAS DESIGNED TO DO IS TO PROTECT THE PEOPLE

2    WHO NEED THE MOST PROTECTION FROM ABUSIVE COLLECTIONS PRACTICES

3    FROM THINGS THAT WOULD REALLY UPSET THEIR LIVES AND THE LAST

4    PEOPLE IN THE WORLD THAT NEED THAT TYPE OF PROTECTION ARE

5    PEOPLE WHO ARE REPRESENTED BY COUNSEL AND SO, THEREFORE, UH,

6    THIS IS NOT SUBJECT TO THE ACT.

7         THE COURT:  I'M JUST REALLY NOT BUYING THAT

8    ARGUMENT.

9         MR. NARITA:  THAT'S FAIR, YOUR HONOR.  AND THAT'S

10   HOW THE LAW IS MADE.

11        THE COURT:  YES, IT IS.  I DO APPRECIATE THAT.

12        MR. NARITA:  SOMETIMES PEOPLE HAVE TO BE ADVOCATES.

13        THE COURT:  YES.

14        MR. NARITA:  I THINK AND I SEE ABSOLUTELY NO

15   DISTINCTION IN MY MIND FROM A LETTER THAT IS DIRECTED ADDRESSED

16   TO A LAWYER, YOU KNOW, A JOE SMITH, ATTORNEY, ON BEHALF OF A

17   DEBTOR, AND ONE THAT COMES IN WHILE A WOMAN WHO IS CONSTANTLY

18   BEING ADVISED BY AN EXPERIENCED FDCPA DEFENSE ATTORNEY LOOKING

19   THROUGH EACH ONE AND FIGURING OUT WHICH ONE WE'RE GOING TO SUE

20   ON IT, WHICH ONE WE'RE GOING TO SETTLE AND HOW WE'RE GOING TO

21   HANDLE IT, IT'S ALL BEING DONE BY MR. SCHWINN.  THIS -- SHE IS,

22   IN THE SAME WAY THAT MR. GUERRERO WAS, NOT SOMEONE WHO THE ACT

23   WAS DESIGNED TO PROTECT, AND, THEREFORE, HAS A LOGICAL

24   EXTENSION OF THE GUERRERO CASE.

25        THE COURT:  IT WILL BE A SAD DAY WHEN WE DEFINE

1      INDIVIDUAL RIGHTS BY WHETHER THEY CAN AFFORD A LAWYER OR NOT

2      AND SAY ONLY PEOPLE WHO DON'T HAVE LAWYERS CAN BENEFIT FROM

3      THESE LAWS.

4          YOU KNOW, I APPRECIATE THE LETTER THAT GOES TO THE LAWYER

5      IS A VERY DIFFERENT SITUATION.

6          YOU KNOW, I'LL COMMENT ON THE BAD MEMORY.  FRANKLY, I

7      THINK SHE'S PRETTY TYPICAL OF PEOPLE WHO HAVE DEBT.  AND, YOU

8      KNOW, IN THIS, I LOOK AT THE FACTORS THAT GO ON WHEN PEOPLE

9      HAVE DEBT AND THEY HAVE TO SURVIVE.  THEY HAVE TO MOVE ON.  AND

10     DWELLING IN THE PAST IS PROBABLY NOT WHAT MANY DEBTORS DO.

11     THEY --

12             MR. NARITA:  IT'S VERY FORGETTABLE STUFF.

13             THE COURT:  IT IS VERY FORGETTABLE STUFF, THAT'S

14     RIGHT.

15         BUT I THOUGHT THAT, YOU KNOW, THAT IT IS COMMON SENSE THAT

16     PEOPLE JUST DON'T RECALL THE MINUTIA OF THEIR PURCHASES WITH A

17     CREDIT CARD AND IT'S JUST THE NATURE OF THE CARD IS HOW MANY

18     TIMES HAVE YOU GOTTEN IN YOUR CAR AND NOT KNOWN HOW MUCH YOU

19     PAID THE GROCERY STORE BECAUSE YOU JUST SIGNED IT AND DIDN'T

20     LOOK?

21         SO HER MEMORY I THOUGHT WAS, FRANKLY, TYPICAL OF WHAT WE

22     WOULD SEE.  HER CREDIBILITY ON THE LAWSUITS, WELL, YOU KNOW,

23     IT -- I THOUGHT IT WAS A MINOR POINT.  IS IT GOING TO HURT AT

24     TRIAL?  I PUT IT IN THE CATEGORY OF ANY INDIVIDUAL WHO IS --

25     WHO HAS DEBT, PERSONAL DEBT, IS PROBABLY GOING TO HAVE SOME

1    OTHER BAGGAGE TO BRING ALONG WITH THEM.

2        I THINK THIS WAS TO A LAYPERSON NOT UNDERSTANDING AND

3    KNOWING THE MINUTIA OF A LAWSUIT THAT MIGHT HAVE SETTLED THAT I

4    DIDN'T GET ENOUGH MONEY TO PAY OFF MY DEBTS WOULDN'T BE -- LACK

5    CREDIBILITY.

6        I COULD THINK OF MANY REASONS WHY, YES, IT -- WHY IT

7    WOULDN'T DISTINGUISH HER OR HURT THE CLASS.

8        SO I WASN'T PARTICULARLY CONCERNED ABOUT IT, ALTHOUGH IT'S

9    ALWAYS AN ISSUE TO MAKE SURE THAT SHE CAN REPRESENT THE CLASS

10   ADEQUATELY.

11       HER RELATIONSHIP WITH HER ATTORNEY, WELL, I'M NOT

12   INCLINED.  I DIDN'T THINK -- I READ THE GUERRERO CASE, AND I

13   THOUGHT IT WAS COMPLETELY DIFFERENT.  I'M NOT GOING TO PUSH THE

14   LAW IN THAT DIRECTION.  I APPRECIATE THAT YOU ARE.

15           MR. NARITA:  YOUR HONOR, ALL WE CAN DO AS ATTORNEYS

16   IS HOPE THAT COURTS WILL READ WHAT WE'VE WRITTEN AND IT'S CLEAR

17   THAT THIS COURT HAS AND IT'S A SATISFACTORY EXPERIENCE.

18           THE COURT:  I DO APPRECIATE THAT.  THANK YOU.  ALL

19   RIGHT.

20       MR. ROULSTON, I'M JUST GOING TO HAVE TO REALLY THINK HARD

21   ABOUT THIS.  I AM GENERALLY INCLINED TO GRANT THIS MOTION FOR

22   CLASS CERTIFICATION WITH THE CONCERN ABOUT THE CLAIMS PROCESS.

23       SO I'M NOT PREPARED TO TELL YOU THAT I WILL GRANT IT, BUT

24   WE HAVE CERTAINLY ISOLATED THE ISSUE, AND I THINK WE HAVE

25   TURNED IT OVER ABOUT EVERY WAY IT CAN BE TURNED OVER AND DONE

1   IT TWICE, AND I WILL CONTINUE TO CONSIDER IT.

2           MR. NARITA:  ONE LAST POINT, YOUR HONOR.

3           THE COURT:  YES.

4           MR. NARITA:  IN FAIRNESS, ALTHOUGH I'VE HAD SOME

5   CHANCE TO ADDRESS IT HERE AT THE HEARING, THIS CLAIMS PROCESS

6   IDEA WAS NOT RAISED UNTIL THE REPLY BRIEF.

7           THE COURT:  UH-HUH, YES.

8           MR. NARITA:  THAT'S NOT THE WAY THEY PLED IT IN THE

9   COMPLAINT AND THAT'S NOT THE WAY -- WE WERE NOT PUT ON NOTICE

10  OF THAT IN THEIR OPENING PAPERS.

11          THE COURT:  OKAY.

12          MR. NARITA:  SO IF THIS IS SERIOUSLY THE WAY THAT

13  THE COURT WOULD LIKE TO GO, I WOULD LIKE AT LEAST THE

14  OPPORTUNITY TO BRIEF THE ISSUE AS TO WHETHER OR NOT THIS IS

15  GOING TO WORK OR WHAT THE RAMIFICATIONS ARE.

16      I TRIED TO DO MY BEST.

17          THE COURT:  THAT ACTUALLY WOULD BE HELPFUL TO THE

18  COURT TO HAVE VERY LIMITED BRIEFING FROM EACH OF YOU ON WHETHER

19  IT'S APPROPRIATE TO PUT THIS ISSUE OVER TO THE CLAIMS PROCESS

20  AND WHAT PROBLEMS THAT MIGHT ENGENDER BY DOING SO.

21      MR. ROULSTON, WOULD YOU BE OPPOSED TO A LITTLE MORE WORK?

22          MR. ROULSTON:  WELL, IT DEPENDS, YOUR HONOR.  TO

23  QUICKLY ADDRESS THIS POINT THAT IT WAS NOT RAISED UNTIL THE

24  REPLY, I MEAN, FRANKLY, THE OPPOSITION WAS WHOLESALE

25  MISDIRECTION.  THIS IS REALLY NOT AN ISSUE AT ALL.

1       AND I THINK THE COURT HAS, TO SOME EXTENT, YOU KNOW, GONE

2    DOWN MR. NARITA'S ROAD A LITTLE BIT.  BUT THE REASON WHY WE

3    DIDN'T ADDRESS THIS HEAD ON IS BECAUSE, AS WE HAVE CITED, ALL

4    OF THE OTHER COURTS SAY THIS IS NOT AN ISSUE FOR CERTIFICATION

5    OF THE CLASS UNDER 23.  SO WHEN THEY RAISED IT, THEN WE HAD TO

6    SAY, OH, WELL, EVEN IF YOU THOUGHT THIS WAS A PROBLEM, HERE ARE

7    ALL OF THE FIXES AND HERE'S ALL OF THE WAYS THAT THE COURT SAY

8    THIS IS NOT A PROBLEM.

9       SO WHATEVER THE COURT ORDERS ON BRIEFING, WE WILL DO, BUT

10   I DIDN'T THINK IT WAS AN ISSUE, TO BE FRANK.

11          THE COURT:  I APPRECIATE THAT.

12      MR. NARITA, I THINK THAT WOULD BE HELPFUL, BUT I'M ONLY

13   GOING TO GIVE YOU THREE PAGES.

14          MR. NARITA:  OKAY.

15          THE COURT:  AND THAT'S NOT MUCH WHEN YOU HAVE DOUBLE

16   SPACE.  YOU HEARD ME CHEW OUT THE OTHERS.

17          MR. NARITA:  OH, YES.

18          THE COURT:  AND SO I WILL ALLOW -- AND, FRANKLY, IF

19   YOU WOULD LIKE TO DO IT AS A LETTER AS OPPOSED TO A BRIEF, I'M

20   GLAD TO DO THAT BECAUSE IT HAS TO BE FILED, OF COURSE, THE WAY

21   YOU NORMALLY FILE, BUT IF YOU COULD JUST IN THE HEADING CALL IT

22   SUPPLEMENTAL LETTER BRIEF.

23      AND WE'RE JUST ABOUT -- WE'RE JUST IN THE LAST THROES OF

24   SUMMER SO I DON'T WANT TO MAKE YOU MISERABLE ON WHEN YOU GET

25   THIS, BUT IT'S A PRETTY DISCRETE ISSUE.

1    WHEN WOULD YOU PROPOSE YOUR SUBMISSION?

2         MR. NARITA:  WELL, YOUR HONOR, I WOULD PROPOSE IT

3    SOONER EXCEPT THAT I'M ABOUT TO TAKE OFF FOR A WEEK OF

4    DEPOSITIONS.

5         THE COURT:  OH, THAT SOUNDS LIKE FUN.

6         MR. NARITA:  SO.

7         THE COURT:  SEPTEMBER 5TH, DOES THAT WORK?

8         MR. NARITA:  WE CAN DO SEPTEMBER 5TH.

9         THE COURT:  MR. ROULSTON, I'LL GIVE YOU THE CHOICE

10   OF WHETHER YOU WOULD LIKE TO SEE WHAT MR. NARITA SUBMITS AND/OR

11   DO YOUR OWN OR SIMULTANEOUS.

12        MR. ROULSTON:  WE'LL PREFER TO SEE AND THEN REPLY TO

13   IT, IF NECESSARY.

14        THE COURT:  THAT'S GREAT.

15        MR. NARITA:  AND OUT OF AN ABUNDANCE OF CAUTION,

16   YOUR HONOR, SHALL THE LETTER BE SINGLE SPACED AND ANY

17   PARTICULAR -- I GENERALLY DO SINGLE SPACE LETTERS WITH 12.5,

18   BUT I CAN DO IT ANY WAY THE COURT WANTS.

19        THE COURT:  I'M GLAD TO HAVE A SINGLE SPACED LETTER

20   WITH 12 POINT FONT AND NO FOOTNOTES, PLEASE, AND THAT WILL HELP

21   ME.  AND YOU'RE KIND TO ASK.

22        AND, MR. ROULSTON, IF I COULD RECEIVE YOUR SUPPLEMENTAL

23   BRIEF, ANYTHING YOU WOULD LIKE TO SUBMIT WITH THE SAME

24   REQUIREMENTS OF THE THREE PAGES, A LETTER, DOUBLE SPACED --

25   SINGLE SPACE, SORRY, NO FOOTNOTES BY SEPTEMBER 12TH, IS THAT

```
 1    GOING TO WORK FOR YOU?

 2              MR. ROULSTON:  THAT'S FINE, YOUR HONOR.

 3              THE COURT:  THAT'S GREAT.  ALL RIGHT.  WELL, THANK

 4    YOU ALL.  I THINK THAT A LOT OF TIME AND EFFORT GOES INTO THESE

 5    MOTIONS.  THE COURT IS REQUIRED TO MAKE A RIGOROUS ANALYSIS OF

 6    THE ISSUES, WHICH I WILL, WHICH I HAVE ALREADY BEGUN, AND I

 7    DON'T WANT TO GET DOWN THE LINE AND ONLY HAVE A MOTION TO

 8    DECERTIFY.  THAT DOESN'T SERVE -- I MEAN, YOU'RE WELCOME TO

 9    FILE ONE, AND I'M NOT PRECLUDING IT BUT IT DOESN'T SERVE ANYONE

10    WELL TO PLAN ON IT.

11              MR. NARITA:  THANK YOU, YOUR HONOR.

12              MR. ROULSTON:  THANK YOU VERY MUCH, YOUR HONOR.

13         (COURT CONCLUDED AT 10:46 A.M.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076

17

18       DATED:  AUGUST 21, 2014

19

20

21

22

23

24

25