1

2

3

# UNITED STATES DISTRICT COURT

4

## NORTHERN DISTRICT OF CALIFORNIA

5

### SAN JOSE DIVISION

6

7    ELLEN ANNETE GOLD,                          Case No.  13-cv-02019-BLF

            Plaintiff,
8

9        v.                                      **ORDER GRANTING IN PART,
                                                 DENYING IN PART MOTION FOR
10   MIDLAND CREDIT MANAGEMENT,                  CLASS CERTIFICATION**
     INC., et al.,
11                                               [Re:  ECF 58]
            Defendants.

12

13        In this putative class action lawsuit, plaintiff Ellen Annete Gold alleges that defendants

14   Midland Credit Management, Inc. and Midland Funding, LLC (collectively, "Defendants")

15   violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et*

16   *seq.*, and the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ.

17   Code § 1788 *et seq.*, by sending an allegedly false, deceptive, and misleading letter concerning

18   Plaintiff's past-due balance with third party creditor HSBC Bank Nevada, N.A.  Plaintiff now

19   seeks to certify a class of California residents who received the same allegedly misleading letter.

20        On August 14, 2014, the Court heard oral argument on Plaintiff's motion and ordered

21   supplemental letter briefs regarding the use of a claim form to identify class members, an

22   identification method that Plaintiff raised for the first time in her reply brief.  The supplemental

23   briefing concluded on September 12, 2014.[1]  Having carefully considered all of the parties'

24   respective written submissions and the oral argument of counsel, for the reasons stated herein, the

25   Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Class Certification.

26

27

28   _____

[1] Defendant submitted a brief response to Plaintiff's submission on September 14, 2014 in order to
correct a misstatement made in Plaintiff's letter brief.  ECF 79.

*United States District Court*
*Northern District of California*

## I.     BACKGROUND

Plaintiff owes a financial obligation, "namely a consumer credit account issued by HSBC Bank Nevada, N.A.," that was at some time prior to this lawsuit "consigned, placed or otherwise transferred to Defendants for collection." Compl. ¶¶ 13-14, ECF 1.  The subject of this action is a collection notice dated May 3, 2012 that Defendants sent to Plaintiff.  *Id.* ¶ 15-17, Exh. 1.  Though the letter states that the current owner of the debt is defendant Midland Funding, LLC, *id.* ¶ 18, Plaintiff alleges that the following passages in the notice and accompanying brochure are misleading:

> "We can help you reduce your past balance with HSBC Bank Nevada, N.A. and get your finances back on track."

> "Your credit report will be updated with each payment made, and once you've completed your agreed-upon payments to settle the account, your credit report will be updated as 'Paid in Full'!"

> "Having a good credit report is important . . . We can help you get your finances back on track."

*Id.* ¶¶ 19, 21, 23.  It appears to be Plaintiff's theory that because Defendants are the "current owners" of the debt, these passages misleadingly imply either that any debt is still owed to HSBC Bank or that Defendants can affect the manner in which HSBC Bank reports the debt to credit bureaus.  *Id.* ¶¶ 20, 22, 24.  Based on this theory of alleged misrepresentation, Plaintiff contends that Defendants violated provisions of the federal Fair Debt Collection Practices Act ("FDPCA"), 15 U.S.C. § 1692 *et seq.*, and of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.33, and seeks to certify a class under both acts.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that a plaintiff must meet before the Court may certify a class.  As the Supreme Court has recently reiterated:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard.  Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,

United States District Court
Northern District of California

1  typicality of claims or defenses, and adequacy of representation, as
   required by Rule 23(a).   The party must also satisfy through
2  evidentiary proof at least one of the provisions of Rule 23(b).

3  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotations and citations omitted).

4        A court's analysis of class certification "must be 'rigorous' and may 'entail some overlap

5  with the merits of the plaintiff's underlying claim.'"  *Amgen Inc. v. Conn. Ret. Plans & Trust*

6  *Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

7  2551 (2011)).   However, merits questions may only be considered to the extent that they are

8  "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.*

9  at 1195.  Within the framework of Rule 23, the Court ultimately has broad discretion over whether

10  to certify a class.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

11  **III.   DISCUSSION**

12        Plaintiff seeks to certify a "hybrid" class under Rule 23(b)(2) and (b)(3) defined as:

13            "(i) all persons with addresses in California (ii) to whom Defendants
             sent, or caused to be sent, a notice in the form of Exhibit '1'
14            attached to the Class Action Complaint (iii) in an attempt to collect
             an alleged debt originally owed to HSBC Bank Nevada, N.A. (iv)
15            which was primarily for personal, family, or household purposes (as
             shown by Defendants' records or the records of the original
16            creditor), (v) which were not returned undeliverable by the U.S. Post
             Office (vi) during the period one year prior to the date of filing this
17            action."

18  Pl.'s Mot. 1.  As previously stated, Plaintiff's proposed class would encompass claims under both

19  the FDCPA and the Rosenthal Act.   The parties do not appear to dispute that the same definition

20  can be used for classes under both acts.  *See* Def.'s Opp. 1, n.1, ECF 61.  The Court's task is thus

21  to determine whether Plaintiff has affirmatively demonstrated compliance with Rule 23.  If

22  Plaintiff has satisfied the Rule 23 requirements, then a class may be certified for claims under both

23  the FDCPA and the Rosenthal Act.

24        **A.   Rule 23(a) Requirements**

25        Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous

26  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

27  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

28  of the class; and (4) the representative parties will fairly and adequately protect the interests of the

United States District Court
Northern District of California

3

1    class." Fed .R. Civ. P. 23(a).  In addition to these explicit requirements of "numerosity,

2    commonality, typicality and adequacy of representation," *Mazza v. Am. Honda Motor Co.*, 666

3    F.3d 581, 588 (9th Cir. 2012), an implied prerequisite to class certification is that "the class must

4    be sufficiently definite; the party seeking certification must demonstrate that an identifiable and

5    ascertainable class exists."  *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D.

6    Cal. 2011); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011); *see also Marcus v.*

7    *BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012).

8           Defendants contend that Plaintiff cannot satisfy the Rule 23(a) requirements of

9    ascertainability, numerosity, commonality, and adequacy of representation.  Def.'s Opp. 4-14.

10   Because Defendants' arguments are largely premised on the ascertainability of the class as defined

11   by Plaintiff, the Court's analysis begins with that prerequisite.

12          **i.   Ascertainability**

13          A class is ascertainable if it is defined by objective criteria and "sufficiently definite so that

14   it is administratively feasible" to determine whether a particular individual is a member of the

15   class.  *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2012 WL 993531, at *1-2 (N.D. Cal. Mar.

16   23, 2012).  Ascertainbility, as one court in this district has noted, "is needed for properly enforcing

17   the preclusive effect of final judgment." *Xavier*, 787 F. Supp. 2d at 1089.  "The class definition

18   must be clear in its applicability so that it will be clear later on whose rights are merged into the

19   judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Id.*; *see*

20   *also* Manual for Complex Litigation (Fourth) § 21.222 (2004).

21          Here, the dispute centers on the criterion in Plaintiff's proposed class definition that the

22   underlying debt originally owed to HSBC Bank have been incurred "primarily for personal,

23   family, or household purposes (as shown by Defendants' records or the records of the original

24   creditor)."[2]  Defendants contend that their records do not show the reasons for which the unpaid

25   obligations were incurred and have supplied the declaration of one of Midland Credit

---

27   [2] Although the Rosenthal Act applies only to "credit transactions" as defined by that statute, the
28   parties do not appear to dispute that in this context, Plaintiff's definition of the class would suffice
     under both statutes so long as the primary purpose for incurring the monetary obligation was for
     personal, family, or household use.  *See* Def.'s Opp. 1, n.1.  The Court concurs.

United States District Court
Northern District of California

1   Management's Consumer Support Services managers to support that assertion.  Def.'s Opp. 6-13;

2   Decl. of Angelique Ross, ECF 61-2.  Furthermore, Defendants note—and Plaintiff does not

3   dispute—that Plaintiff has not sought discovery of the "records of the original creditor" to show

4   how potential class members may be identified.  Def.'s Opp. 6.

5       Plaintiff replies that Defendants should not be permitted to escape class certification

6   through shoddy recordkeeping.  Pl.'s Reply 2-4, 9.  For the first time on reply, Plaintiff also

7   suggested ways in which class members could be identified, including consulting "the creditor's

8   records or information" to determine whether the credit card was issued to an individual or

9   business name, *id.* at 5, and by asking purported class members "a single question to determine

10   whether they are entitled to relief," *id.*  In sum, Plaintiff proposes that "a review of Defendants'

11   and/or HSBC's records, *e.g.*, seeing if the account is in the name or an individual or business, a

12   review of HSBC's records for the nature of the individual's purchases, and, if necessary, a simple

13   claim form question to the putative class member" are sufficiently administratively feasible

14   methods of ascertaining class members.[3]  *Id.* at 6.

15       In the context of the FDCPA, the Court must be mindful that the Act is a "broad remedial

16   statute," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011), and that

17   certifying a class "will serve a 'deterrent' component to other debt collectors who are engaging, or

18   consider engaging in this type of debt collection tactic."  *Evon v. Law Offices of Sidney Mickell*,

19   688 F.3d 1015, 1031-32 (9th Cir. 2012).  As such, certifying a reasonably ascertainable FDCPA

20   class for purely statutory damages will serve the purposes of the Act, which is targeted at debt

21   collector activities.  Moreover, the ascertainability of a class for *res judicata* purposes is less of a

22   concern here, where the disputed criterion is a prerequisite to the claim.  *Turner v. Cook*, 362 F.3d

23   1219, 1226-67 (9th Cir. 2004).  Those whose financial obligations were not incurred primarily for

24   personal, family, or household purposes do not have claims under the FDCPA and do not pose a

25   risk of "satellite litigation . . . over who was in the class in the first place."  *Xavier*, 787 F. Supp.

26   _____

27   [3] It is unclear how Plaintiff proposes to obtain these records from HSBC Bank, a third party to this
action.  As Defendants pointed out, and this Court confirmed at the August 14, 2014 hearing, fact

28   discovery is closed in this case and Plaintiff has not identified any authority permitting her to
obtain the records of a third party after the close of discovery.

2d at 1089.  Those individuals whose debts do qualify under the FDCPA would be bound by the preclusive effect of final judgment.

The question thus boils down to one of administrative feasibility—Plaintiff's class definition is not inherently unascertainable, but the information upon which she initially intended to rely (and included in her definition) may not show what she thinks it will show.  In this regard, the Court is troubled by the uncontradicted assertion that Plaintiff has not conducted any discovery to determine whether HSBC's records include the information that she suggests would be useful to identifying class members.  *See* Def.'s Opp. 6.  However, and in spite of Plaintiff's failure to obtain discovery from HSBC, the Court finds that identifying the class is sufficiently administratively feasible such that Plaintiff has met her burden of demonstrating that the class is ascertainable.

Plaintiff has demonstrated through her own declaration that her financial obligation was incurred on a credit card issued by HSBC Bank, with which she purchased goods and services primarily for personal or household use.  *See* Decl. of Ellen Annette Gold ¶ 4, ECF 2.  That a portion of her debt was also incurred through cash advances for which she cannot recall the purpose does not detract from the evidence that the primary amount came from credit card purchases.  *See id.*; *see also* Decl. of Tomio B. Narita Exh. A (Gold Dep.) 49:5-51:2, ECF 61-1. As such, it would be reasonable to infer that there are other individuals among the recipients of the letter that are similarly situated to Plaintiff.

Further, Plaintiff's suggestion that the name on each debt account can be used to identify whether the financial obligation was incurred by an individual or business is a reasonable one and can be easily applied to whittle down the number of potential class members.[4]  Pl.'s Reply 5; *see also* Pl.'s Ltr. 2-3.  Those potential class members can be further narrowed by use of an appropriately drafted notice or by requiring submission of credit card statements to certify the nature of the financial obligation.  In the worst case scenario, if the names on each account cannot

---

[4] Plaintiff in her supplemental letter brief asserted that "Defendants have already disclosed to Plaintiff the names and addresses of the class members."  Pl.'s Ltr. 1.  Defendants deny this assertion.  *See* Def.'s Resp. Ltr., ECF 79.

1   be used to preliminarily identify potential class members, a notice and claim form may need to be

2   sent to all recipients of the objectionable letter.  In this event, the class certification may be altered

3   or amended or, if the claim forms prove unreliable, Defendants may move to decertify the class.

4        Defendants in their supplemental letter brief urge that Plaintiff's solution is unworkable,

5   and that "[a]llowing potential class members to self-identify regarding this 'threshold' issue would

6   deprive Defendants their due process right to challenge the validity of the class members' claims

7   and would encourage inaccurate and potentially fraudulent claims."  Def.'s Ltr. 1.  Defendants cite

8   to recent Third Circuit cases rejecting the identification of a consumer class using claim forms as

9   prejudicial to both defendants and absent class members whose claims could be diluted by

10  fraudulent or inaccurate claims.  *Id.* at 1-2 (citing *Marcus v. BMW of North America, LLC*, 687

11  F.3d 583 (3d Cir. 2012); *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)).

12       Certainly, Defendants are entitled to assurance through reasonable proof that only qualified

13  individuals with debt related to personal, family, or household purposes are confirmed as class

14  members.  However, as many other courts have determined in considering class certification under

15  the FDCPA, the mere fact that the debt collection agency does not segregate business and

16  consumer debt accounts is not enough to thwart class certification.  Moreover, acceptance of

17  Defendants' arguments would effectively eliminate class action litigation under the FDCPA

18  because in all cases, separating out the business debt from the consumer debt would pose a bar to

19  class certification.  Numerous federal courts throughout the country have rejected similar

20  arguments and certified consumer class action cases under the FDCPA.  This Court finds those

21  cases persuasive.  *See Butto v. Collecto Inc.*, 290 F.R.D. 372, 382 (E.D.N.Y. 2013); *Macarz v.*

22  *Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) (in a similar FDCPA case where the

23  defendant did not maintain records that identified the nature of the debt, the court stated "[t]he

24  defendant's protestations of impossibility do not alter the Court's conclusion that class certification

25  is appropriate here."); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998)

26  ("The need to show that the transactions involved in a particular case are consumer transactions is

27  inherent in every FDCPA class actions [sic].  If that need alone precluded certification, there

28  would be no class actions under the FDCPA.").  In any event, Defendants' due process concerns

United States District Court
Northern District of California

7

can be addressed more fulsomely after class certification, when the Court may evaluate their overall conduct and total exposure.  15 U.S.C. §§ 1692k(a)(2)(B), (b)(2); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (constitutional questions best addressed after class certification).

Due to the already discussed difficulties in applying a class definition that relies on documents that Plaintiff does not and has not had access to, the Court revises the class definition as follows:

> "(i) all persons with addresses in California (ii) to whom Defendants sent, or caused to be sent, a notice in the form of Exhibit '1' attached to the Class Action Complaint (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A. (iv) which was primarily for personal, family, or household purposes, (v) which were not returned undeliverable by the U.S. Post Office (vi) during the period one year prior to the date of filing this action."

The Court expects that class identification will proceed according to Plaintiff's proposal and begin with identification, using Defendants' records, of accounts held in individual as opposed to business names.  Further identification of class members may be carried out through use of a court-approved notice and claim form.  As modified, the Court finds that the proposed class is reasonably ascertainable.

### ii. Numerosity

The requirement of numerosity is satisfied if the class is so large that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  A plaintiff need not state the exact number of class members, and there is no threshold number above which impracticability is presumed.  *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 488 (N.D. Cal. 2011); *see also* William B. Rubenstein, Newberg on Class Actions § 3:13-14 (5th ed., 2011).

To demonstrate numerosity, Plaintiff supplied Defendants' response to Interrogatory No. 1, which indicates that Defendants sent "43,942 letters in the form of [the letter at issue] to persons with California addresses regarding a financial obligation originally owed to HSBC Bank Nevada, N.A."[5]  Pl.'s Mot. App. 2.  Defendants do not dispute this fact but do contend that because

---

[5] Plaintiff interprets this to indicate that the letter was sent to 43,942 *recipients* with California addresses.  *See* Pl.'s Mot. 3.  Though Defendants do not challenge this interpretation, the Court

United States District Court
Northern District of California

1  Plaintiff has not shown that any these recipients incurred the financial obligation for primarily

2  personal or household reasons, she cannot demonstrate numerosity.  Def.'s Opp. 13.

3          The Court does not find Defendants' argument persuasive, as Plaintiff has demonstrated

4  through her own declaration and deposition testimony that her debt was incurred on a credit card

5  issued by HSBC Bank that she primarily used to purchase personal and household goods and

6  services.  *See* Gold Decl. ¶ 4; Gold Dep. 49:5-51:2.  That portions of her debt include cash

7  advances for which she could not recall the purpose does not detract from a common sense

8  inference, based on the known nature of Plaintiff's financial obligation, that at least a portion of

9  the 43,942 letters were likely directed to debtors who incurred financial obligations on credit cards

10  used primarily for personal, family, or household purposes.  *See Butto*, 290 F.R.D. at 382;

11  *O'Donovan*, 278 F.R.D. at 488-89.  The Court thus finds that the proposed class is sufficiently

12  numerous to satisfy Rule 23(a)(1).

13          **iii.  Commonality**

14          The requirement of commonality is met if there are "questions of law and fact common to

15  the class."  Fed. R. Civ. P. 23(a)(2).  "What matters to class certification . . . is not the raising of

16  common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to

17  generate common answers apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551.

18  As such, commonality "requires the plaintiff to demonstrate the class members have suffered the

19  same injury."  *Evon*, 688 F.3d at 1029 (quoting *Dukes*, 131 S. Ct. at 2551).

20          Defendants argue that Plaintiff cannot establish commonality because she cannot establish

21  that all class members have "debts" as they are defined by the FDCPA.  Def.'s Opp. 13-14.  That

22  argument presumes an unascertainable class, which this Court has rejected.  Moreover, contrary to

23  Defendants' assertion that Plaintiff is alleging that class members have merely "all suffered a

24  violation of the same provision of law," Def.'s Opp. 14 (quoting *Dukes*, 131 S. Ct. at 2551), the

25  members of the proposed class have actually all suffered the same alleged injury—they all

26

27  observes that Defendants' interrogatory response states that 43,942 *letters* were sent.  Presumably,

28  all 43,942 letters were not sent to the same person, but the number of recipients could potentially
    be fewer than the number of letters sent.

1    received the same allegedly misleading letter.  Anyone who is not a member of the class has

2    suffered no injury and also no violation of the law.

3            Ultimately, because "a debt collector's liability under § 1692e of the FDCPA is an issue of

4    law," the Court's resolution of the issue of liability will generate a dispositive common answer in

5    this action.  *Gonzales*, 660 F.3d at 1061; *see also Tourgeman v. Collins Fin. Servs., Inc.*, --- F. 3d -

6    --, No. 12-56783, 2014 WL 2870174 (9th Cir. 2014).  The Court finds that sufficient to satisfy the

7    commonality requirement of Rule 23(a)(2).

8                              **iv.  Typicality**

9            In certifying a class, the claims of the class representative must be typical of the claims of

10   the class.  Fed. R. Civ. P. 23(a)(3).  This ensures that "the named plaintiff's claim and the class

11   claims are so interrelated that the interests of the class members will be fairly and adequately

12   protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

13           In this case, Plaintiff alleges that she and each class member were sent an identical and

14   unlawful form collection letter and therefore subjected to the same violations of the FDCPA.  Pl.'s

15   Mot. 5.  As such, the Court concludes, and Defendants do not argue to the contrary, that the claims

16   of the class representative are typical of the claims of the class.  *See Abels v. JBC Legal Grp.,*

17   *P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (certifying class of persons in California who received

18   identical form collection letters in alleged violation of the FDCPA).  Based on the foregoing, the

19   Court finds that the typicality requirement of Rule 23(a)(3) has been met.

20                    **v.  Adequacy of Representation**

21           The named plaintiff in a class action must fairly and adequately protect the interests of the

22   class.  Fed. R. Civ. P. 23(a)(4).  In assessing the named plaintiff's adequacy, a court considers two

23   questions:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

24   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

25   on behalf of the class?"  *Evon*, 688 F.3d at 1031 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

26   1011, 1020 (9th Cir.1998)).

27           Plaintiff is represented by Fred W. Schwinn and Raeon R. Roulston of Consumer Law

28   Center, Inc, and O. Randolph Bragg of Horwitz, Horwitz and Associates, Ltd.  Each of these

United States District Court
Northern District of California

United States District Court
Northern District of California

1   attorneys has submitted a declaration outlining his education and pertinent experience, and

2   Defendants do not challenge the qualifications of Plaintiff's counsel.

3          Defendants do challenge Plaintiff's adequacy as a class representative because she is

4   subject to a unique defense and because her poor memory undermines her credibility.

5   Specifically, Defendants contend that Plaintiff's retention of attorney Fred W. Schwinn as her

6   "'regular lawyer' to handle all of her collection-related matters"—of which there are several—

7   subjects her to the unique defense that the objectionable letter was "effectively" sent to her

8   counsel, and the FDCPA does not extend to communications sent to debtor's counsel.  Def.'s Mot.

9   14-15 (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 929, 941 (9th Cir. 2007)).

10  Defendants' argument is not persuasive because it is undisputed that the letter here was sent to

11  Plaintiff's home address.  That Plaintiff may have immediately passed that letter on to her retained

12  counsel does not place her in the same position as the plaintiff in *Guerrero*, whose counsel was the

13  direct and sole recipient of one of the challenged letters.  *Guerrero*, 499 F.3d at 934 (holding that

14  "communications directed solely to a debtor's attorney are not actionable under the [FDCPA]").

15         As to Plaintiff's credibility, the Court does not find her inability to recall the specific

16  nature of her debts sufficient to defeat her otherwise apparent adequacy as a class representative.

17  The ultimate question of liability is a legal one for which this Court looks to the face of the letter

18  to conduct an "an objective analysis that takes into account whether the 'least sophisticated debtor'

19  would likely be misled by [the] communication.'"  *Gonzales*, 660 F.3d at 1061.  Plaintiff's

20  credibility is not directly relevant to that question.  *See Harris v. Vector Mktg. Corp.*, 753 F. Supp.

21  2d 996, 1015-16 (N.D. Cal. 2010) (collecting cases and concluding that credibility defeats

22  adequacy only when directly relevant to litigation).  To be sure, if Defendants successfully

23  demonstrate that Plaintiff's financial obligations were not primarily incurred for personal, family,

24  or household purposes, she would no longer be able to pursue a claim under the FDCPA.  In such

25  an event, Defendants may move to decertify the class.  At this juncture, however, Plaintiff's

26  credibility is not such a significant impediment that it creates a conflict of interest with other class

27  members.  The Court accordingly finds that Plaintiff is an adequate representative of the class.

28

11

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), Plaintiff must also satisfy "through evidentiary proof" one of the three subsections of Rule 23(b).  *Comcast*, 133 S. Ct. at 1432.  Here, Plaintiff seeks to certify a "hybrid" class under Rule 23(b)(2) and (b)(3).  Pl.'s Mot. 9-11.  The Court addresses the appropriateness of a (b)(3) class first.

#### i.    Rule 23(b)(3) Class

A class may be certified under Rule 23(b)(3) if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The (b)(3) class, an "adventuresome innovation" added in the 1960's, adds these requirements of "predominance" and "superiority" in order to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

#### a.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.  The predominance inquiry presumes that there is commonality and entails a more rigorous analysis focusing "on the relationship between the common and individual issues."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (internal quotations and citations omitted).

Plaintiff contends that predominance is satisfied where, as here, the question of liability focuses on the legality of a standardized document or practice.  Pl.'s Mot. 6-7.  Defendants argue, relying on *Dukes*, that individual issues relating to the nature of each class member's financial obligation to HSBC Bank defeat predominance.  Def.'s Opp. 17-18.  Defendants point to recent

12

1    post-*Dukes* cases in which the court has denied class certification where individual inquiries

2    overwhelmed common class questions.[6]  *Id.*; *see also* Def.'s Ltr. 2-3 (citing, *inter alia*, *Soto v.*

3    *Commercial Recovery Sys., Inc.*, C 09-2842 PJH, 2011 WL 6024514 (N.D. Cal. Dec. 5, 2011)).

4            In *Soto*, the Court denied certification of an FDCPA class on predominance grounds

5    because liability hinged on the applicability of a California law to class members, which, in turn,

6    depended on whether class members obtained purchase money loans secured by primary owner-

7    occupied residences.  *Soto*, 2011 WL 6024514, at *7-8.  The Court reasoned that "proof of the

8    [California law's] applicability to the class members must be susceptible to class wide proof" but

9    noted that some potential class members had already been disqualified because they misstated the

10   purpose of the loan on their uniform residential loan applications—the proof that plaintiff intended

11   to rely on to establish class membership.  *Id.* at *7.  Because the applications were demonstrably

12   unreliable, they "expose[d] a need for individualized inquiry" that defeated predominance.  *Id.*

13           *Soto* is distinguishable from the instant case.  First, the Court does not understand *Soto* to

14   indicate that the applicability of the *FDCPA* is subject to class wide proof.  The *Soto* court focused

15   on the applicability of a California law to establish an element of liability, which naturally must be

16   proven across the class.  Here, the Court has already determined that the legality of the underlying

17   letter sent by Defendants is a question of law that is subject to class wide disposition.  Moreover,

18   although Defendants do not possess the information that Plaintiff believes will assist in identifying

19   class members, the other documents and methods discussed above are not demonstrably

20   unreliable.  To be sure, memories fade, and many class members are likely similarly situated to

21   Plaintiff in that they have generalized recollections of purchases.  This problem can be mitigated,

22   for example, by requiring documentary proof of the nature of the financial obligations to

23   determine whether, at a minimum, they are primarily credit card purchases as opposed to cash

24   advances.  Finally, unlike the *Soto* class, which sought actual damages, *see id.*, the proposed class

25   here seeks only statutory damages, which will involve less stringent individualized inquiry.

26

27   _____

     [6] The Court notes that the *Dukes* court focused primarily on the Rule 23(a) requirements.  The

28   Court understands Defendants' argument to be that the individualized inquiry into class
     membership in this case permeates all of the Rule 23 requirements, thus affecting ascertainability,
     commonality, and predominance.

United States District Court
Northern District of California

1    At bottom, the broad remedial purpose of the FDCPA compels this Court to conclude that

2    the Rule 23(b)(3) requirement of predominance is satisfied where, as here, statutory damages are

3    sought to deter debt collectors from engaging in prohibited behavior.  If this Court were to find

4    that Defendants' letter violated the FDCPA, they would be liable to all members of the class

5    which, by definition, includes only those with qualifying "debt" as that term is defined by the Act.

6    The liability issue thus represents a significant aspect of the case that is not diminished by

7    potential difficulties in identifying class members.  In such instances, the Court notes that its

8    ability to determine the amount of damages, as well as the statutory limitation on damages, offer

9    protections against potentially fraudulent claims or overbroad classes that are not typically present

10   in (b)(3) classes for actual damages.  *See* 15 U.S.C. §§ 1692k(a)(2)(B), (b)(2).  If, after the

11   certification of the class, Defendants discover that class identification is unworkable or unreliable,

12   they may move to decertify the class.  Moreover, should Defendants be found liable, the class

13   certification may be altered or amended before the entry of final judgment.  Fed. R. Civ. P.

14   23(c)(1)(C).

15                    **b.  Superiority of Class Action**

16           Rule 23(b)(3) sets forth a nonexhaustive list of factors a court should consider, including

17   the interests of the individual members in controlling their own litigation, the desirability of

18   concentrating the litigation in the particular forum, and the manageability of the class action.  Fed.

19   R. Civ. P. 23(b)(3)(A)-(D).  "The superiority inquiry under Rule 23(b)(3) requires determination

20   of whether the objectives of the particular class action procedure will be achieved in the particular

21   case.  This determination necessarily involves a comparative evaluation of alternative mechanisms

22   of dispute resolution."  *Hanlon*, 150 F.3d at 1023.

23           Plaintiff argues that a class action is the superior vehicle for adjudicating consumer rights

24   relating to Defendants' collection letter because individual recovery is small, and resorting to

25   alternative mechanisms would be unduly inefficient.  Pl.'s Mot. 8-9.  Defendants do not dispute

26   this point.  The Court agrees with Plaintiff that a class action is superior in this context and that

27   this action is therefore appropriate for certification under Rule 23(b)(3).  *See Hunt v. Check*

28   *Recovery Sys., Inc.*, 241 F.R.D. 505, 514-15 (N.D. Cal. 2007) (finding FDCPA class action

United States District Court
Northern District of California

superior to individual claims and noting that FDCPA specifically provides for and contemplates class action relief).

Plaintiff's Motion to Certify is accordingly GRANTED as to the Rule 23(b)(3) class.

### i.  Rule 23(b)(2) Class

A class may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 131 S. Ct. at  2557.  Although the Supreme Court has never directly addressed the viability of a so-called "hybrid" (b)(2)/(b)(3) class, it has reiterated that "in the context of a class action predominantly for money damages . . . absence of notice and opt-out violates due process," and concluded that "the serious possibility" that money damages *may* predominate cautioned against reading Rule 23(b)(2) to include money damages.  *Id.* at 2559 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

Here, there are no actual damages alleged in this action, and Plaintiff repeatedly indicates that she only intends to pursue statutory damages.  *See* Pl.'s Reply 9-11.  Plaintiff argues that these damages are "incidental" to declaratory relief and do not predominate over the requested equitable remedy.  *Id.*  Defendants contend that Plaintiff's request for damages is in fact her primary claim and, as such, she cannot pursue a Rule 23(b)(2).  Def.'s Opp. 18-19 (citing *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003)).  Furthermore, Defendants note that declaratory judgment would be moot because they have stopped using the letter at issue in this litigation.  Def.'s Opp 21.[7]  The Court agrees with Defendants.

Plaintiff's own definition of the class applies only to Defendants' past conduct.  *See*

---

[7] Although not critical to the reasoning in this order, Defendants also argue—and the Court takes note—that other courts have declined to certify (b)(2) classes on the ground that the FDCPA does not authorize equitable relief.  Def.'s Opp. 19-20; *See Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 452 (D. Neb. 2010) (collecting cases); *see also Palmer v. Stassinos*, 233 F.R.D. 546, 552 (N.D. Cal. 2006).

United States District Court
Northern District of California

Compl. ¶ 30 (defining class to extend to persons "to whom Defendants *sent*, or caused to be *sent*" the offending letter "during the period one year prior to the date of filing this action through the date of class certification" (emphasis added)).  Furthermore, Defendant has discontinued use of the offending letter.  Def.'s Opp. 21.  Thus, declaratory relief, insofar as it could have applied to future recipients of the letter, does not predominate over the monetary relief sought by the class which, by definition, has already received the offending letter.

As a practical matter, should the Court award statutory damages, it would inherently require a finding that Defendants' letter violated the FDCPA and Rosenthal Act.  Plaintiff has not articulated any benefit from maintaining a separate (b)(2) class, and the Court does not find there to be any benefit to class members from declaratory relief that is not already provided for in a (b)(3) damages class.  Given the serious possibility that money damages predominate over declaratory relief, the Court declines to certify a (b)(2) class that affords no notice and opportunity to opt out.  Plaintiff's Motion to Certify is accordingly DENIED as to the Rule 23(b)(2) class.

## IV.  ORDER

For the foregoing reasons, Plaintiff's Motion to Certify Class is GRANTED as to Plaintiff's Rule 23(b)(3) class, which shall be defined as follows:

> (i) all persons with addresses in California (ii) to whom Defendants sent, or caused to be sent, a notice in the form of Exhibit '1' attached to the Class Action Complaint (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A. (iv) which was primarily for personal, family, or household purposes, (v) which were not returned undeliverable by the U.S. Post Office (vi) during the period one year prior to the date of filing this action.

Plaintiff Ellen Annette Gold is appointed as class representative to proceed on behalf of this class for violations of the FDCPA and Rosenthal Act in connection with Defendants' mailing of the letter attached to the Complaint as Exhibit 1.  This class is subject to alteration or amendment prior to the entry of final judgment.  Fed. R. Civ. P. 23(c)(1)(C).

**IT IS SO ORDERED.**

Dated: October 7, 2014

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California