1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  JEFFREY A. TOPOR (SBN 195545)
   jtopor@snllp.com
3  LIANA MAYILYAN (SBN 295203)
   lmayliyan@snllp.com
4  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
5  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
6  Facsimile: (415) 352-2625

7  Attorneys for Defendants
   Midland Credit Management, Inc.
8  and Midland Funding, LLC

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13   ELLEN ANNETE GOLD, on behalf      )   CASE NO.: 5:13-cv-02019-BLF
     of herself and all others similarly )
14   situated,                          )   **REPLY MEMORANDUM OF**
                                        )   **POINTS AND AUTHORITIES IN**
15              Plaintiff,              )   **SUPPORT OF MOTION FOR**
                                        )   **SUMMARY JUDGMENT BY**
16         vs.                          )   **DEFENDANT MIDLAND FUNDING,**
                                        )   **LLC;**
17   MIDLAND CREDIT                     )
     MANAGEMENT, INC., a Kansas         )   Date:  January 8, 2015
18   corporation; and MIDLAND          )   Time:  9:00 a.m.
     FUNDING, LLC, a Delaware limited  )   Ctrm:  3, 5th Floor
19   liability company,                )
                                        )
20              Defendants.            )   The Honorable Beth Labson Freeman
                                        )
21   ─────────────────────────         )

22

23

24

25

26

27

28

# I. **INTRODUCTION**

Plaintiff Ellen Annette Gold ("Gold") concedes defendant Midland Funding, LLC ("Midland Funding") never makes phone calls or sends letters in an effort to collect debts. In other words, Midland Funding does not use "any instrumentality of interstate commerce or the mails" to collect debts. Consequently, Gold effectively concedes Midland Funding is not a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, or the California Fair Debt Collection Practices Act ("the Rosenthal Act"), Cal. Civ. Code §§ 1788.

The mere fact that Midland Funding purchases defaulted financial obligations, by itself, does not make Midland Funding a "debt collector," as Gold would have this Court believe. Such an argument was recently rejected in *Kasalo v. Trident Asset Mgmt., LLP,* _ F. Supp. 3d _, 2014 WL 3056821 (N.D. Ill. July 7, 2014). Simply acquiring a debt without interacting directly with the consumer – as Gold admits is the case here – does not automatically make one a debt collector.

Likewise, the fact that Midland Funding engaged another entity, defendant Midland Credit Management, Inc. ("MCM), to collect unpaid accounts it purchased does not make Midland Funding an "indirect" debt collector. Even if the Court were to conclude Midland Funding could be held vicariously liable for MCM's actions, there is no basis for such a finding here because Gold has presented no evidence that Midland Funding exercised control over MCM sufficient to hold Midland Funding vicarious liable. In sum, Midland Funding is a not a "debt collector."

Finally, there is no basis for awarding the class statutory damages against both Midland Funding and MCM. Indeed, Gold's argument is undone by her theory that Midland Funding and MCM are essentially part of the same company. If that is the case, then there is only one "debt collector" from whom the class can recover. Regardless, Midland Funding is at worst only vicariously liable for MCM's conduct, in which case Midland Funding and MCM are jointly and severally liable for a single award of statutory damages under the FDCPA. And, as explained in Defendants'

1   opposition to Gold's summary judgment motion (Doc. No. 95), the class cannot
2   recover an award of statutory damages under both the FDCPA and the Rosenthal Act
3   if the combined award would exceed the statutory limit of $500,000 set forth in the
4   FDCPA.  For each of these reasons, and for the additional reasons stated in MCM's
5   concurrent motion for summary judgment, which Midland Funding joins, summary
6   judgment is proper here.

7   **II.   ARGUMENT**

8       **A.   Midland Funding Is Not A Debt Collector**

9       Gold argues Midland Funding is a "debt collector" because it purchases
10  defaulted consumer debts and because it "indirectly" collects defaulted consumer
11  debts by engaging the services of MCM.  Simply asserting this, however, does not
12  make it so.  Notably, Gold offers no evidence to create a triable issue of fact that
13  Midland Funding is a "debt collector" under either theory.

14      Congress included two separate definitions of "debt collector" in the FDCPA.
15  Under the first, a "debt collector" is "any person who uses any instrumentality of
16  interstate commerce or the mails in any business the principal purpose of which is
17  the collection of any debts. . . ."  15 U.S.C. § 1692a(6).  Gold ignores the fact this
18  definition requires her to show Midland Funding "used" the phone or the mail in
19  furtherance of its principal purpose.  She concedes Midland Funding "does not itself
20  make phone calls and send letters."  Doc. No. 94 at 4:16-17.  In other words, Gold
21  concedes Midland Funding does not "use[] any instrumentality of interstate
22  commerce or the mails" to attempt to collect.  It therefore does not satisfy the first
23  definition.

24      Under the second definition, a "debt collector" is "any person . . . who
25  regularly collects or attempts to collect, directly or indirectly, debts owed or due or
26  asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Gold argues Midland
27  Funding satisfies this definition because its "primary purpose . . . is purchasing
28  defaulted consumer debts *for collection*," and the fact that MCM acts on behalf of

1    Midland Funding "is merely a quirk" of how the companies are structured under their

2    parent company, Encore Capital Group.  Doc. No. 94 at 4:18-20 (italics in original).

3    She says Midland Funding does not purchase defaulted debts "simply to have and to

4    admire," so it necessarily follows that the principal purpose of the company <u>must</u> be

5    the collection of debts via interstate commerce or the mail.  There is no evidence to

6    support Gold's *ipso facto* reasoning.[1]  An identical argument was recently rejected in

7    *Kasalo*, 2014 WL 3056821.

8         There, defendant OPS 10LLC ("OPS") acquired plaintiff's defaulted account

9    and engaged defendant Trident Asset Management, LLC ("Trident") to collect it.

10   *See id.* at *3.  Trident (like MCM here) drafted and sent plaintiff a letter on behalf of

11   OPS.  *See id.* at *1.  Plaintiff did not present any evidence "OPS drafted anything

12   that was sent to [him] or took any action toward him."  *Id.* at *3.  The court observed

13   – similar to what Gold argues here – that "OPS may be a debt collector in one literal

14   sense of the term; it purchases debts that people owe, such as the one in this case,

15   and it does so for the purpose of making money on the debts by hiring others to

16   collect."  *Id.* at *3.  This was irrelevant, however, because the FDCPA "has its own

17   definition of the term ['debt collector']" and that definition "governs interactions

18   between debt collector and consumers and seeks 'to eliminate abusive debt collection

19   practices by debt collectors.'"  *Id.*, quoting 15 U.S.C. § 1692(a).  Consequently, the

20   court reasoned "[a]n entity that acquires a consumer's debt hoping to collect it but

---

[1] Gold points to the deposition testimony of Angelique Ross and Jared McClure. *See* Doc. No. 94 at 4:10-11.  When asked "what is the primary business of Midland Funding, LLC," Ms. Ross responded only that "Midland Funding, LLC purchases defaulted consumer accounts."  Doc. No. 93-5 at 18:21-24. Similarly, Mr. McClure only affirmed that the debts "are actually purchased by Midland Funding and collected by Midland Credit Management."  Doc. No. 93-7 at 27:9-12.  That Midland Funding's primary purpose may be <u>purchasing</u> accounts is not evidence that its primary purpose is <u>collecting</u> those accounts.

1    that does not have any interaction with the consumer itself does not necessarily

2    undertake activities that fall within this purview." *Id.*

3        Nor was the fact "OPS purchased [plaintiff's] debt when it was in default"

4    sufficient, standing alone, to render OPS a "debt collector." As the court explained,

5    it was undisputed that

> OPS has not undertaken an collection activity, as required to fit the definition
> of 'collector' . . . . OPS does not 'attempt[] to collect,' . . . . It hires others to
> do so, as evidenced by the fact that all of [plaintiff's] interactions in this case
> were with Trident. OPS's name was on the letter Trident sent to [plaintiff] but
> OPS did not send the letter or any other letters or notices, nor did it make any
> phone calls to [plaintiff]. The Court therefore concludes that no reasonable
> jury could find in favor of [plaintiff] on his FDCPA claims against OPS,
> which require a determination that OPS is a 'debt collector' within the
> meaning of the statute.

11    *Id.* at 4. The same result follows here.

12       Again, Gold concedes Midland Funding did not call her, write her, or take any

13    other collection action directly as to her. *See* Doc. No. 94 at 4:16-17. The question,

14    thus, is whether Midland Funding is a debt collector because it acted "indirectly."

15    As Gold acknowledges, the Ninth Circuit has not decided if "an entity indirectly

16    collects a debt when the entity engages a (non-attorney) debt collector to collect a

17    debt on its behalf." *Id.* at 4:26-27. Midland Funding submits that it is not an

18    "indirect" debt collector because it does not regularly collect or attempt to collect

19    debts owed or due or asserted to be owed or due another, and that the Court should

20    follow the reasoning of *Kasalo*, 2014 WL 3056821 at *4, on this point.

21       Gold acknowledges the court in *Scally v. Hilco Receivables, LLC*, 392 F.

22    Supp. 2d 1036 (N.D. Ill. 2005), held a company that purchased and owned defaulted

23    debt (Hilco), and contracted with another company to collect the debt (MRS), did

24    not act indirectly and was thus not a debt collector under the FDCPA.[2] The *Scally*

25    court refused to accept plaintiff's argument that "indirect collection" could be

26    grounded "on a theory of vicarious liability," reasoning that there was no risk of both

27

28

_____

[2] *Accord Kasalo*, 2014 WL 3056821 at *4.

1  companies avoiding possible liability because the company hired to collect (MRS)

2  "is a debt collector and is subject to the terms of the statute." *Id.* at 1039.

3      In an attempt to circumvent *Scally*, Gold maintains the Court should not

4  follow it because it "was later heavily criticized by *Schutz v. Arrow Fin. Servs.*, 465

5  F. Supp. 2d 872, 876 (N.D. Ill. 2006) – a case from the same district." Doc. No. 94

6  at 5:4-5. *Schutz* does not help Gold.  The question presented in *Schutz* was whether

7  one debt collector could be held vicariously liable for the actions of a second debt

8  collector that was the agent of the first.  *See Schutz*, 465 F. Supp. 2d at 875.  The

9  court, disagreeing with the part of *Scally* that limited vicarious liability to situations

10 where a plaintiff sought to hold a debt collector vicariously liable for the act of its

11 <u>attorney</u> debt collector, found the debt collector could be held so liable regardless

12 whether the second debt collector was an attorney.  *See id.* at 876.

13     In other words, the *Schutz* holding applies only where the company to be held

14 vicariously liable is a debt collector itself.  As explained above, Midland Funding is

15 not a debt collector.  Further, Gold has presented no evidence that Midland Funding

16 exercised the requisite control over MCM.  She has not shown Midland Funding

17 participated in drafting the letter, approving the letter, or deciding to send it.  To the

18 contrary, Midland Funding is like the entities in *Kasalo* and *Scally* – it neither

19 engaged in direct collection efforts, nor exercised control over MCM.  Simply put,

20 there is no basis for finding Midland Funding vicariously liable vicariously liable for

21 MCM's actions and Midland Funding is entitled to summary judgment.[3]

22

23

24  [3] Gold also relies on *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), for the proposition that "an assignee may be deemed a 'debt collector' if the

25 obligation is already in default when it is assigned." Doc. No. 94 at 5:25-6:2.  The Ninth Circuit has never adopted *Pollice*, and this court should decline to follow it, as the

26 cases upon which the Third Circuit relied do not support its holding.  None of those cases held that one who acquires an obligation in default is <u>always</u> a debt collector under

27 the FDCPA, solely because the obligation was in default when assigned.  At most, they

28 held that an assignee of an obligation is not a debt collector if the obligation was not in

1       Gold has not proved Midland Funding is a "debt collector" under the FDCPA

2  or the Rosenthal Act.  Midland Funding is entitled to summary judgment.

3

4            **B.**     **The Class May Not Recover Damages Based Upon Midland Funding's Net Worth, Because Its Liability, If Any, Is Vicarious**

5       Gold contends the Court "may impose damages against Midland Funding," as

6  well as against MCM.  Doc. No. 94 at 6:7.  Although she does not explicitly say it,

7  she apparently maintains the class may recover $500,000 in statutory damages from

8  both Midland Funding and MCM under the FDCPA.  *See id.* at 6:22-23 (saying

9  Defendants are "trying to 'anchor' the Court to a 6-figure damage award, instead of a

10  7-figure award").  Gold, however, cites no precedent for this novel position.

11       Gold's argument for a double damage recovery is directly at odds with her

12  position that both defendants are part of a "nationwide debt buying enterprise" (Doc.

13  No. 93 at 1:23), and that their roles in that enterprise are "merely a quirk of the

14  corporate structure of Defendants' parent company, Encore Capital Group, Inc,"

15  Doc. 94 at 4:20.  If Defendants truly are just related cogs of their parent company

16  (non-party Encore), then they cannot be considered two separate and independent

17  "debt collectors," and the class is entitled to just one recovery of up to $500,000.

18

19  default when assigned, as was the case in each decision.  *See Bailey v. Security Nat.*

20  *Serv. Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129

21  F.3d 952, 958-59 (7th Cir. 1997); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103,

22  107 (6th Cir. 1996).  The only authority cited by the *Pollice* court that actually supported

its conclusion – that because assignees of obligations not in default are not debt

23  collectors, the converse must necessarily be true, *i.e.*, "an assignee may be deemed a

'debt collector' if the obligation was already in default when it is assigned" – is a 1997

24  article in the 3d edition of the American Jurisprudence Proof of Facts from which the

25  court quoted.  *See Pollice*, 225 F.3d at 404, citing Hon. D. Duff McKee, *Liability of*

*Debt Collector to Debtor under the Federal Fair Debt Collection Practices Act,* 41 Am.

26  Jur. Proof of Facts 3d 159, at § 3 (1997).  That article, however, has been superseded by

27  Rosemary E. Williams, *Proof Under The Fair Debt Collection Practices Act*, 104 Am.

Jur. Proof of Facts 3d, and the language the *Pollice* court quoted does not appear in the

28  more recent article.

Gold has sued both companies as "debt collectors" and their conduct must be viewed independently. Gold concedes Midland Funding did not directly attempt to collect a debt from her. Thus, she has not shown Midland Funding failed to comply with the FDCPA "with respect to [her]," so there is no basis for assessing statutory damages against Midland Funding. *See* 15 U.S.C. § 1692k(a).[4] If Midland Funding has any liability here (and it does not, for the reasons previously stated), it is only vicarious liability.

### C.    There Is No Basis To Award The Class Statutory Damages In Excess Of $500,000

Gold has proffered no case law, no treatise or any other authority to support her argument that the FDCPA allows the class to recover statutory damages in excess of $500,000. Indeed, limiting class statutory damages to $500,000 per case is consistent with the FDCPA, which was designed deliberately with specific limitations on the amount of statutory damages that can be awarded. For instance, courts have consistently held that statutory damages in individual actions are limited to $1,000 "per proceeding," not $1,000 "per violation."[5] This limitation on

---

[4] Section 1692k provides, in relevant part, as follows: "[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damages sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . . " 15 U.S.C. 1692k.

[5] *See, e.g., Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) (limiting statutory damages to $1,000 where "numerous violations of the FDCPA are predicated upon one set of circumstances"); *Wright v. Finance Servs. of Norwalk, Inc.*, 22 F.3d 647, 650-51 (6th Cir. 1994) (additional damages limited to $1,000 per proceeding even though defendant committed fourteen violations of FDCPA: "Congress certainly knows how to write statutes that make each separate violation

1  individual recovery suggests that a class is likewise limited to a single recovery of

2  no more than $500,000.

3      Finally, Gold argues that even if "the $500,000 cap on class action FDCPA

4  damages applies to multiple defendants jointly and severally," the class may still

5  recover $1,000,000 because she is also pursuing relief on behalf of the class under

6  the Rosenthal Act.  This is not an argument Midland Funding raised in its motion,

7  but for the reasons set forth in Defendants' opposition to Gold's motion for summary

8  judgment – which are incorporated here by reference –  the class cannot recover an

9  award of statutory damages under both the FDCPA and the Rosenthal Act if the

10 combined award would exceed the statutory limit of $500,000 set forth in the

11 FDCPA.  *See* Doc. No. 95 at 22:10-24:8.

12      **D.   Midland Funding Is Entitled To Summary Judgment For The
            Reasons Stated In MCM's Motion**

13      Midland Funding is also entitled to summary judgment in its favor for all the

14 reasons explained in MCM's opening memorandum, as well as MCM's reply filed

15 concurrently with this motion.  Rather than burden the Court by repeating all of the

16 arguments and authorities from MCM's memoranda, Midland Funding simply

17 incorporates them by reference and hereby joins MCM's motion.

18 **III.   CONCLUSION**

19      For each of the forgoing reasons, Defendants respectfully request that the

20 Court enter an Order granting summary judgment for Defendants on all claims.

21

22

23 _____

24 subject to a separate penalty, or even that make each separate day of a violation a
   separate offense subject to a separate penalty.") (citations omitted); *Harper v. Better*

25 *Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992) (additional damages limited to
   $1,000 even though defendant committed seven violations of statute:  "The FDCPA

26 does not on its face authorize additional statutory damages of $1,000 per violation of the
   statute, of $1,000 per improper communication, or of $1,000 per alleged debt.  If

27 Congress had intended such limitations, it could have used that terminology."); *Peter*

28 *v. GC Servs.*, 310 F.3d 344, 352, n.5 (5th Cir. 2002).

1    DATED:  December 4, 2014          SIMMONDS & NARITA LLP
                                       TOMIO B. NARITA
2                                      JEFFREY A. TOPOR
                                       LIANA MAYILYAN
3

4                                      By:   s/Jeffrey A. Topor
                                          Jeffrey A. Topor
5                                         Attorneys for Defendants
                                          Midland Credit Management, Inc.
6                                         and Midland Funding, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28