UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELLEN ANNETE GOLD,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC., et al.,<br><br>Defendants. | Case No.  13-cv-02019-BLF<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF 81, 82, 90, 96] |

In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  This class action lawsuit tests whether a debt collector transgresses the FDCPA and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code. § 1788 *et seq.*, when it states in a debt collection letter that it can reduce a debtor's "past due balance with" the original creditor.  Before the Court are the parties' respective Motions for Summary Judgment, as well as Defendants' Motion to Strike Expert Report.  The Court heard argument on all motions on January 8, 2015.

After careful consideration of the parties' respective written submissions and oral argument, the Court GRANTS IN PART Defendants' Motion to Strike Expert Report, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendants' Motions for Summary Judgment for the reasons stated herein.

United States District Court<br>Northern District of California

1   **I.    BACKGROUND**

2       **A.    Factual History**

3           Named plaintiff Ellen Annete Gold ("Plaintiff") owes a financial obligation, "namely a

4   consumer credit account issued by HSBC Bank Nevada, N.A," that was at some time prior to this

5   lawsuit "consigned, placed or otherwise transferred" to defendants Midland Funding, LLC

6   ("Midland Funding") and Midland Credit Management, Inc. ("MCM," together with Midland

7   Funding, "Defendants") for collection.  Compl. ¶¶ 13-14, ECF 1.  The subject of this action is a

8   May 3, 2012 collection letter ("Letter") and accompanying educational brochure ("Brochure") that

9   MCM sent to Plaintiff, which are attached as an appendices to this order.  *See also id.* ¶¶ 15-17,

10  Exh. 1.  From May 2, 2012 to the present, 43,942 of these letters were sent to persons with

11  California addresses regarding a financial obligation originally owed to HSBC Bank Nevada, N.A.

12  ("HSBC").  *See* Decl. of Fred W. Schwinn ISO Pl.'s Mot. Exh. B., ECF 84-6 (Am. Resp. to

13  Interrog. 1).

14          The troublesome Letter is written on MCM letterhead and is addressed to Plaintiff.  In the

15  top right corner of the letter, in distinctive text, is the statement "We can help you reduce your past

16  due balance with HSBC Bank Nevada, N.A. and get your finances back on track."  The body of

17  the Letter occupies about two-thirds of the page and offers varying discounts on Plaintiff's debt if

18  she pays it in full within a certain amount of time.  In a column to the right of the body are a

19  number of bullet points that summarize the offers, including one that states: "Your credit report

20  will be updated with each payment made, and once you've completed your agreed-upon payments

21  to settle the account, your credit report will be updated as 'Paid in Full'!"  This right-hand column

22  of the Letter concludes with a section that discloses the amount of Plaintiff's current balance,

23  identifies the "Original Creditor" as HSBC, provides the original account number, and indicates

24  that the "Current Owner" is Midland Funding LLC with a "MCM Account No." for reference.

25  Enclosed with the Letter is the Brochure titled "Why paying your bills is so important to a good

26  credit report."  The Brochure states: "Having a good credit report is important . . . We can help

27  you get your finances back on track."  *See* Compl. ¶¶ 19, 21, 23; *see generally id.* Exh. 1.

28          It is undisputed that Midland Funding, not HSBC, is the current owner of Plaintiff's debt.

United States District Court
Northern District of California

Decl. of Angelique Ross ¶ 3, ECF 81-2.[1]  As such, Plaintiff contends that the quoted passages misleadingly imply either that there is a debt still owed to HSBC or that Defendants can affect the manner in which HSBC reports the debt to credit bureaus.  Compl. ¶¶ 20, 22, 24.  Plaintiff thus asserts that the Letter violates provisions of the FDCPA and of the Rosenthal Act.

### B.   Procedural History

On October 7, 2014, the Court certified a class pursuant to Federal Rule of Civil Procedure 23(b)(3) defined as:

> (i) all persons with addresses in California (ii) to whom Defendants sent, or caused to be sent, a notice in the form of Exhibit '1' attached to the Class Action Complaint (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A. (iv) which was primarily for personal, family, or household purposes, (v) which were not returned undeliverable by the U.S. Post Office (vi) during the period one year prior to the date of filing this action.

Order re Class Cert., ECF 80.  On October 31, 2014, after the filing of the instant motions for summary judgment, the Court inquired of the parties the status of class notice and the desirability of completing class notice before a decision on liability.  *See* ECF 89.  The parties jointly responded to indicate that they agreed to postpone completing class notification and opt-outs until after the Court issued a ruling on the pending motions for summary judgment.  Joint Statement re Status of Class Notification, ECF 91.

## II.   DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY

Defendants move to strike the expert report of Evan Hendricks ("Hendricks Report") at ECF 84-12, which Plaintiff filed in support of her motion for summary judgment.  Def.'s Mot. to Strike, ECF 96.  Defendants contend that Mr. Hendricks lacks the proper qualification to opine on the falsity of the Letter and Brochure, that his opinions on that subject are unreliable, and further that such opinions impermissibly tread on the province of the court to determine the ultimate legal question of liability under the FDCPA.  *Id.* at 4-8.  The Court agrees and GRANTS IN PART Defendants' Motion to Strike.

When considering expert testimony offered pursuant to Federal Rule of Evidence 702, the

---

[1] Duplicate declaration at ECF 82-2.

trial court acts as a "gatekeeper" by making a preliminary determination of whether the expert's testimony is reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).  Expert testimony is admissible if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Here, Mr. Hendricks's curriculum vita reveals that he is unquestionably qualified to testify on the subjects of credit reporting and consumer fraud.  *See* Hendricks Report at 11-23.  As Plaintiff notes, Mr. Hendricks has been qualified as an expert witness in numerous cases involving those subjects.  Pl.'s Opp. to Mot. to Strike 3-6, ECF 101.  Defendants are correct, however, in pointing out that this case does not involve credit reporting or consumer fraud; it concerns statements made in a debt collection letter, and whether those statements violate the FDCPA.  Def.'s Mot. to Strike 4-6.  The Court finds that Mr. Hendricks lacks the requisite qualifications to reliably opine on the latter.

Moreover, Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness to set forth in his written report, among other things, the foundation for his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii); *Phillips v. Netblue, Inc.*, No. C-05-4401 SC, 2007 WL 528722, at *1 (N.D. Cal. Feb. 13, 2007).  The portion of the Hendricks Report concerning the Letter contains much in the way of conclusory assertions as to the Letter's misleading nature and Defendants' intent to mislead and little in the way of explanation or factual bases for those conclusions.  For example, in the last paragraph of the section titled "Brief Background on How Credit Reporting System," Mr. Hendricks states that "HSBC does not furnish data regarding debts that are part of Defendant Midland's portfolio."  Hendricks Report at 2.  The foundation for this statement, if any, is not disclosed in the report, and Plaintiff's counsel acknowledged this defect at the January 8 hearing.

Finally, the Court agrees with Defendants that Mr. Hendricks's opinions concerning the falsity of the Letter and Brochure impermissibly encompass the ultimate legal issue question in this case.  Although Plaintiff's argument that there is a distinction between factual falsity and

United States District Court
Northern District of California

liability under the FDCPA is well taken, *see* Pl.'s Opp. to Mot. to Strike 9, there are no *factual* disputes on which Mr. Hendricks could reliably opine.  Defendants concede that "they were not able to alter anything HSBC was reporting [ ] about Gold's account."  Def.'s Reply to Mot. to Strike 2, ECF 103.  Defendants thus acknowledge that *if* the Letter and Brochure suggest that Defendants could affect HSBC's reporting to credit agencies, that suggestion would be false.  As discussed below, the question of whether the communications *could* be read to so suggest is a question that this Court resolves as a matter of law.  Thus, to the extent that Mr. Hendricks offers opinions concerning the misleading nature of the Letter and Brochure, they are irrelevant, either because the facts are not in dispute or because they are legal conclusions.  As such, the Court GRANTS IN PART Defendants' Motion to Strike with respect to: all sections of the Hendricks Report before the section titled "Brief Background on How Credit Reporting System"; the last paragraph in the "Brief Background" section; the first, third, and fifth through seventh paragraphs of the section titled "Defendant Midland Knew/Should Have Known of its Falsehoods"; and all paragraphs in the sections titled "Midland's Representations on Improving Plaintiff's Credit Were Misleading" and "Midland's Misrepresentations Designed to Exploit Consumer Awareness of Importance of Good Credit."  These afore-mentioned sections are STRICKEN.[2]

The remaining portions of the Hendricks Report (beginning on page 4 titled "Potential Areas of Testimony") provide background information regarding credit reporting.  Mr. Hendricks is unquestionably qualified in this respect, and his testimony concerning this background information shall be considered to the extent such information is relevant to the Court's analysis of the legality of the letter at issue.  Defendants' Motion to Strike is accordingly DENIED IN PART as to those portions of the Hendricks Report.

## III.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

---

[2] Striking the portions of Mr. Hendricks' report that opine on the ultimate legal conclusion will have little effect on Plaintiff's case.  Mr. Hendrick's report opinions simply echo the legal arguments that Plaintiff has set forth in her summary judgment briefing.  *See* Def.'s Mot. 7-8.

United States District Court
Northern District of California

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A material fact is one that could affect the outcome of suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its initial burden, the non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Schneider v. TRW, Inc.*, 938 F.3d 986, 991 (9th Cir. 1990). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### B.     Midland Funding's Motion for Summary Judgment

Defendant Midland Funding separately moves for summary judgment on all of Plaintiff's claims on the ground that it is not a debt collector subject to liability under the FDCPA and Rosenthal Act. Midland Funding Mot., ECF 82. For the reasons stated herein, the Court agrees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### i. Material Facts

For purposes of this motion, the parties do not dispute that Midland Funding purchased the defaulted accounts from HSBC and referred those accounts to MCM for collection pursuant to an intercompany servicing agreement. Decl. of Tomio Narita Exh. A (Deposition of Angelique Ross, hereinafter "Ross Dep.") at 18:21-21:22; 35:10-37:2; 38:6-39:20, ECF 81-3;[3] *see also* Ross Decl. ¶ 3. It is furthermore undisputed that MCM is responsible for collecting on the accounts and furnishing information to consumer reporting agencies on Midland Funding's behalf. Ross Decl. ¶ 7; Ross Dep. 25:16-26:6.

The only dispute is whether this legal arrangement between the two entities means that Midland Funding can be held liable for MCM's debt collection activities. That is a legal question that the Court resolves in Midland Funding's favor.

### ii. Discussion

Under the FDCPA, the term "debt collector" means "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Critical to both definitions of the term is the notion that a debt collector is one who directly or indirectly engages in collection activity.

Midland Funding argues that it has no employees and therefore cannot be a business whose principal purpose is the collection of debts via interstate commerce or the mails. Midland Funding Mot. 4. Moreover, Midland Funding further argues that it "engaged in no direct or indirect efforts to collect on [Plaintiff's] account." *Id.* at 1. Analogizing its situation to *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036 (N.D. Ill. 2005), Midland Funding argues that its debt buying business does not meet either definition of a debt collector under the FDCPA (and, by

---

[3] Duplicate declaration and exhibits at ECF 82-3.

extension, the Rosenthal Act) and that there is no basis for holding Midland Funding vicariously liable for the alleged misdeeds of MCM.  *Id.* at 4-6.  Midland Funding further contends that should there be a triable issue of fact on its status as a debt collector, this Court should not permit the plaintiff class to recover statutory damages from *both* Midland Funding *and* MCM.  *Id.* at 4-8.

Plaintiff acknowledges that Midland Funding has no employees and uses MCM to "physically collect the debts."  Pl.'s Opp. to Midland Funding at 4, ECF 94.  Thus, Midland Funding has satisfied its initial burden to demonstrate no genuine dispute concerning these material facts relevant to its status as a debt collector under the FDCPA.  The only evidence that Plaintiff offers in opposition is Midland Funding's acknowledgment that its business is "purchas[ing] defaulted consumer accounts."  *Id.*  (citing Ross Dep. 18:21-19:18 and 20:6-21:21; Schwinn Decl. Exh. E (Deposition of Jared McClure, hereinafter "McClure Dep.") at 26:19-28:8).  There is no evidence to suggest that Midland Funding's business is debt *collection*.  Rather, Plaintiff would have the Court fill in the gap with an inference that because Midland Funding is in the business of acquiring defaulted debts, it must therefore be in the business of collecting on those debts.  *See id.* (arguing that Midland Funding does not acquire defaulted consumer accounts "simply to have and admire" and that the fact that Midland Funding does not have any employees is "merely a quirk of the corporate structure of Defendants' parent company").

As another court addressing this point has reasoned:

> The [FDCPA] governs interactions between debt collectors and consumers and seeks "to eliminate abusive debt collection practices by debt collectors."  An entity that acquires a consumer's debt hoping to collect it but that does not have any interaction with the consumer itself does not necessarily undertake activities that fall within this purview.

*Kasalo v. Trident Asset Mgmt.*, LLC, --- F. Supp. 2d---, No. 12 C 2900, 2014 WL 3056821, at *3 (N.D. Ill. July 7, 2014) (quoting 15 U.S.C. § 1692(a)).  In the absence of evidence showing a purpose to collect on those debts, Plaintiff's legal arguments are insufficient to create a triable issue of fact on whether Midland Funding "uses any instrumentality of interstate commerce or the mails" to engage in a "business the principal purpose of which is the collection of any debts."  15 U.S.C. § 1692a(6).

United States District Court
Northern District of California

1        As to whether Midland Funding is a debt collector under the second prong of the definition

2    set forth in § 1692a(6), Plaintiff notes, correctly, that there are "no cases in this Circuit which

3    discuss whether an entity indirectly collects a debt when the entity engages a (non-attorney) debt

4    collector to collect a debt on its behalf."  Pl.'s Opp. to Midland Funding 4.  Plaintiff then proceeds

5    to rely upon a number of cases holding debt collectors vicariously liable for the actions of their

6    debt collection attorneys.  *Id.* at 5 (citing *Fox v. Citicorp.*, 15 F.3d 1507, 1516 (9th Cir. 1994) and

7    *Caron v. Maxwell*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999)).  Plaintiff also relies on the

8    subsequent case of *Schutz v. Arrow Financial Services, LLC*, 465 F. Supp. 2d 872 (N.D. Ill. 2006),

9    arguing that *Schutz* criticized the reasoning of *Scally*, finding that it "wrongly limited vicarious

10   liability to those entities who engaged attorney debt collectors to collect on their behalf, contrary

11   to the legislative intent of the FDCPA."  Pl.'s Opp. to Midland Funding 5 (emphasis omitted)

12   (citing *Schutz*, 465 F. Supp. at 876).  These arguments miss the point because Plaintiff conflates

13   two different questions to arrive at her conclusion.

14       Whether Midland Funding is a "debt collector" because it "indirectly" collects debts within

15   the meaning of § 1692a(6) is a distinct and separate question from whether Midland Funding can

16   be held vicariously liable for MCM's alleged misconduct.  The former is a question of primary

17   liability while the latter concerns secondary liability for the actions of an agent.

18       On the first question, Midland Funding's status as a "debt collector" requires an

19   examination of the relationship between it and MCM.  *See Jenkins v. Union Corp.*, 999 F. Supp.

20   1120, 1143 (N.D. Ill. 1998) (plaintiff must show that separate entities are interdependent "single

21   economic enterprise" in order to show that debt holding entity "indirectly" collects through debt

22   collection entity and is therefore a "debt collector").  On this, the Court again finds persuasive the

23   reasoning of the court in *Kasalo*, which addressed the exact scenario in this case.  There, the court

24   held that a company that (1) purchases consumer debts for the purpose of making money on the

25   debts, (2) acquires the debts at issue after they have been charged off, and (3) hires others to

26   collect on those debts may meet the literal definition of a debt collector, but does not fit within the

27   FDCPA's definition of that term.  2014 WL 3056821, at *3-4.  Critically, the plaintiff in *Kasalo*

28   failed to put forth any evidence suggesting that the entity that held the debt accounts had

9

undertaken *any* collection activity, whether directly or indirectly.  *See id.* at *4.  Plaintiff has similarly failed to make such a showing here.

The undisputed facts establish that Midland Funding merely holds debts and engages MCM to collect on those debts.  Plaintiff identifies no evidence suggesting that Midland Funding directs or otherwise participates in MCM's collection activities or that Midland Funding ever communicated with consumer debtors directly.  In fact, Plaintiff offers no evidence to hint at a triable fact on this issue, relying solely on legal argument in opposition to Midland Funding's summary judgment motion.  *See* Pl.'s Opp. to Midland Funding 3-6.  Rendering all inferences in Plaintiff's favor, there is nothing in the record to suggest that Midland Funding does anything other than hold the defaulted accounts and refer them to MCM for collection.  There being no genuine dispute of material fact that Midland Funding does *not* directly or indirectly collect the debts that it holds, Midland Funding is entitled to summary judgment that it is not a debt collector within the meaning of the FDCPA.

Midland Funding's vicarious liability for MCM's misconduct requires a finding that MCM acted as an agent of Midland Funding.  However, the majority of courts to have considered the issue have determined that a principal must be a debt collector in order to be held vicariously liable for the debt collection activities of another.  *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("[w]e do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable"); *Miranda v. Field Asset Servs.*, No. 3:11-CV-1514-GPC-JMA, 2013 WL 124047, at *4 (S.D. Cal. Jan. 9, 2013); *Plumb v. Barclays Bank Delaware*, No. CV-11-3090-RMP, 2012 WL 2046506, at *4 (E.D. Wash. June 5, 2012) ("even vicarious liability under the FDCPA has been restricted to principals who themselves are statutory 'debt collectors'"); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006); *see also Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013) (rejecting aiding and abetting liability

under the FDCPA because it "expressly imposes liability only for the violations of a 'debt collector'"); *but see Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1090 (E.D. Cal. 2013) (rejecting *Oei* and *Pollice* to hold that "non-'debt collector' creditors" can be "vicariously liable for their attorneys' actions" under the FDCPA). The Court is persuaded by the weight of opinion restricting FDCPA liability—whether primary or secondary—to entities that fit the statutory definition of "debt collector" set forth in § 1692a(6). Because Midland Funding does not fit such definition, it cannot be held vicariously liable for MCM's collection activities.

The Court accordingly GRANTS Midland Funding's Motion for Summary Judgment with respect to all of Plaintiff's claims against Midland Funding.[4]

### C. Cross Motions for Summary Judgment on Liability

Plaintiff and MCM each moved for summary judgment on the question of MCM's liability under the FDCPA and the Rosenthal Act. Pl.'s Mot., ECF 90; MCM Mot., ECF 81. Plaintiff contends that the Letter and Brochure threaten to take action that cannot legally be taken, a violation of § 1692e(5) of the FDCPA, and that the communications are materially misleading, a violation of § 1692e(10) of the Act. *See* Pl.'s Mot. 7-15. MCM contends that the Letter and Brochure are not misleading and do not threaten any action and, accordingly, do not violate the FDCPA. *See* MCM Mot. 5-13. The Court agrees with MCM.

"In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). In considering whether a debt collector has violated the proscriptions of § 1692e, the Court analyzes the debt collector's challenged communications from the standpoint of the "least sophisticated debtor." *Id.* at 1062; *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988) (per curiam). The "least sophisticated debtor" standard "is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors. *Gonzales*, 660 F.3d 1055 at 1062 (quoting *Duffy v.*

---

[4] Because Midland Funding cannot be held liable under the FDCPA and the Rosenthal Act for the Letter and Brochure at issue in this action, the Court need not reach Midland Funding's further argument that the plaintiff class cannot recover statutory damages from both defendants.

United States District Court
Northern District of California

*Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000)).  Thus, although it is still an objective one, "the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor."  *Swanson*, 869 F.2d at 1227.

At the same time, "[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."[5] *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996); *see also Gonzales*, 660 F.3d at 1062 (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008), for same proposition); *Strand v. Diversified Collection Serv. Inc.*, 380 F.3d 316, 318 (8th Cir. 2004); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000), *as amended* (Sept. 7, 2000).  The standard serves a dual purpose: "it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."  *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993).

### i.  Material Facts

The material facts relevant to this issue are not in dispute.  Midland Funding purchased defaulted accounts from HSBC (among them, Plaintiff's account) and referred those accounts to MCM for collection.  Ross Decl. ¶ 3; Ross Dep. 18:21-21:22; 35:10-37:2; 38:6-39:20.  MCM is responsible for collecting on the accounts and furnishing information to consumer reporting agencies on Midland Funding's behalf.  Ross Decl. ¶ 7; Ross Dep. 25:16-26:6.  Neither Midland Funding nor MCM has the ability to affect what HSBC reports to consumer reporting agencies concerning Plaintiff's account.  Def.'s Reply to Mot. to Strike 2.  Finally, the parties do not dispute the wording of the Letter and Brochure, only what those words mean.

### ii.  MCM is Not Liable Under FDCPA Section 1692e(5)

Section 1692e(5) prohibits a debt collector from making a "threat to take any action that

---

[5] As some courts have noted, the FDCPA, while a consumer protection statute, "can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme."  *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998).

United States District Court
Northern District of California

cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  "[A] threat need not be express: it can be implied." *Gonzales*, 660 F.3d at 1064.

MCM contends that the Letter and Brochure properly informed debtors of the beneficial effect that paying off their debts would have on their credit scores.  MCM Mot. 12.  It is well established that paying off debts can help to improve one's credit score and that it is not unlawful for debt collectors to remind debtors of this benefit. *Id.* at 13-16.  Plaintiff argues that MCM did not "properly" notify Plaintiff and the class of the relationship between unpaid debt and "credit reputation," but rather "attempted to seduce [Plaintiff] and the class into making payments by misrepresenting a positive outcome of the said payment."  Pl.'s Opp. to MCM 12.  Neither party addresses whether the Letter and Brochure even expressly or implicitly threaten any action.  In fact, Plaintiff specifically argues that "Defendants did not *threaten* a (likely true) bad outcome for non-payment, Defendants represented (falsely) that there would be a good outcome for payment." *Id.* (emphasis added).  Plaintiff's own moving papers fare little better in shedding light on her § 1692e(5) claim, arguing conclusorily that because Defendants made allegedly false representations in the Letter and Brochure, "Defendants have violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10)."  Pl.'s Mot. 9, 10.

Given the paucity of argument on this point, and Plaintiff's concession that the Letter does not threaten a bad outcome, the Court finds that the holding of *Wade v. Regional Credit Association*, 87 F.3d 1098 (9th Cir. 1996), controls in this case: "the [Letter] was not a 'threat to take action that could not legally be taken' in violation of Section 1692e(5)." *Id.* at 1100.  "The body of the notice was informational," and "[t]he least sophisticated debtor would construe the [Letter] as a prudential reminder, not as a threat to take action." *Id.*  The Court accordingly GRANTS MCM's Motion for Summary Judgment with respect to liability under 15 U.S.C. § 1692e(5).

### iii.  MCM is Not Liable Under FDCPA Section 1692(e)(10)

"Section 1692e(10), which prohibits '[t]he use of any false representation or deceptive means to collect ... any debt,' has been referred to as a 'catchall' provision, and can be violated in any number of novel ways." *Gonzales*, 660 F.3d at 1062.  "[I]t is well established that '[a] debt

United States District Court
Northern District of California

United States District Court
Northern District of California

collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)).  However, the Ninth Circuit has agreed with the Sixth and Seventh Circuits in concluding that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).  As the Ninth Circuit recently reiterated in *Tourgeman v. Collins Financial Services, Inc.*:

> "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." In other words, a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA.  "The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).'"

755 F.3d 1109, 1119 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) (quoting *Donohue*, 592 F.3d at 1034 and *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)).

Here, Plaintiff contends that the following three phrases in the Letter and Brochure are materially misleading:

> "We can help you reduce your past balance with HSBC Bank Nevada, N.A. and get your finances back on track."

> "Your credit report will be updated with each payment made, and once you've completed your agreed-upon payments to settle the account, your credit report will be updated as 'Paid in Full'!"

> "Having a good credit report is important . . . We can help you get your finances back on track."

Compl. ¶¶ 19, 21, 23.  Plaintiff asserts that the statement "We can help you reduce your past due balance with HSBC Bank Nevada, N.A. and get your finances back on track" is misleading because it suggests that there is an outstanding balance "with HSBC" that MCM can reduce.  Such a suggestion would be an illusory promise because no such balance exists "with HSBC."  Rather, the balance exists "with" Midland Funding.  Pl.'s Mot. 9.  Plaintiff thus relies on the *Gonzales*

14

court's reasoning that "the debt collector that fails to clarify [ ] ambiguity does so at its peril,"
*Gonzales*, 660 F.3d at 1063, to argue that the ambiguity in MCM's use of the prepositional phrase
"with HSBC" causes the Letter to be materially misleading in violation of the FDCPA, *see* Pl.'s
Mot. 9.  MCM argues that Plaintiff's is a bizarre and idiosyncratic reading of that phrase, and that
even the least sophisticated debtor with a basic understanding of her account history would not be
misled into believing either that MCM is collecting a debt on HSBC's behalf or that there exists
some other debt with HSBC.  Def.'s Mot. 8-9; Def.'s Opp. to Pl.'s Mot. 10-12, ECF 95.  The
Court agrees with MCM.

Consumer protection laws are made "to protect the trusting as well as the suspicious."
*Fed. Trade Comm'n v. Standard Educ. Soc.*, 302 U.S. 112, 116 (1937).  However, even the
especially trusting least sophisticated debtor is not a "dimwit;" she presumably "has 'rudimentary
knowledge about the financial world' and is 'capable of making basic logical deductions and
inferences.'"  *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) (quoting
*Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).  Here,
Plaintiff's account of the least sophisticated debtor fails to take into consideration the rest of the
Letter, which clearly identifies HSBC as the "Original Creditor" and Midland Funding as the
"Current Owner."  Given that the least sophisticated debtor is presumed to have a willingness to
read with care, any ambiguity injected by MCM's use of the prepositional phrase "with HSBC" is
eliminated by the clear statement that HSBC is the original creditor and Midland Funding is the
current owner.  It is reasonable to presume that even the least sophisticated consumer would read
the entire Letter, especially the entire right-hand column where both the supposedly offending
statement and the identification of the original creditor and current owner of the account are
located.  In this way, Plaintiff's reliance on *Gonzales* is inapposite because that case involved an
ambiguous conditional phrase—with no clarification—that suggested the debt collector might do
something it had no intent (or legal right) to do.  *See Gonzales*, 660 F.3d at 1063 ("Conditional
language, particularly in the absence of any language clarifying or explaining the conditions, does
not insulate a debt collector from liability.").  Furthermore, the second page (or back) of the Letter
states at the very top: "Please understand this is a communication from a debt collector.  This is an

United States District Court
Northern District of California

15

attempt to collect a debt.  Any information obtained will be used for that purpose."  Compl. Exh. 1.  The FDCPA expressly requires that collection notices contain such language, 15 U.S.C. § 1692e(11), and no debtor reading this disclaimer could reasonably believe that MCM was doing anything other than collecting on a debt previously owed to HSBC.[6]

Moreover, even if some debtors could read the phrase "with HSBC" to suggest that MCM was offering to reduce a debt currently held by HSBC, Plaintiff identifies no evidence suggesting that knowing the ultimate recipient of one's debt payments is information that is material to a consumer's ability to intelligently choose her response to the Letter.  There is furthermore no evidence to suggest that a consumer would reap some benefit from paying off debts held by HSBC that she would not otherwise receive by paying off debts held by Midland Funding.  Unlike in *Tourgeman*, there is no contention that the information in the Letter concerning the "original" account with HSBC Bank is incorrect.  Nor is it suggested that there is some defect in the factual information contained in the letter that would frustrate a consumer's ability to respond to the letter in a timely fashion.  *See Tourgeman*, 755 F.3d at 1121 ("[T]he factual errors in Paragon Way's letters to Tourgeman could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.").  Thus, Plaintiff has failed to demonstrate that a mistaken understanding of the phrase "with HSBC" would be so material as to mislead the least sophisticated debtor in violation of 15 U.S.C. § 1692e(10).

Nor does the Court find persuasive Plaintiff's argument that the statement "We can help you reduce your past due balance with HSBC Bank Nevada, N.A. and get your finances back on track," taken in conjunction with "Your credit report will be updated with each payment made,

---

[6] In a similar vein, it is important to note that the Letter was not the initial communication sent to Plaintiff and the class members.  Defendants have produced the initial communication clearly identifying themselves as debt collectors that have acquired the past due HSBC account.  *See* Ross Decl. Exh. A (letter stating "Midland Funding LLC has purchased your HSBC Bank Nevada, N.A. account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the new servicer of this obligation.").  While Plaintiff may not recall receiving this initial letter, she has put forth no evidence that other class members similarly do not recall or have not received this letter.  Other than her own interpretation of the challenged statement, which this Court finds idiosyncratic and unreasonable, Plaintiff offers no evidence to suggest that others would not recall MCM's initial communication explaining Midland Funding's acquisition of the HSBC account or would not immediately understand, after reading the entirety of the Letter, that "with HSBC" was a reference to their original creditor.

United States District Court
Northern District of California

1    and once you've completed your agreed-upon payments to settle the account, your credit report

2    will be updated as 'Paid in Full'!" and "Having a good credit report is important . . . We can help

3    you get your finances back on track" misleadingly suggests that MCM can modify the way in

4    which HSBC reports Plaintiff's and the class's accounts.[7]  *See* Pl.'s Mot. 9-10.  Plaintiff contends

5    that these statements, *in toto*, represent an "illusory promise to update [Plaintiff's] credit report by

6    modifying HSBC's trade line," and that "any express or implied promise to improve the

7    relationship between [Plaintiff] and HSBC (e.g., by updating HSBC's trade line on [Plaintiff's]

8    credit report to read 'Paid in Full') was mere manipulation on the part of the Defendants."  *Id.* at

9    10; *see also* Pl.'s Opp. to MCM 11-12.

10          To the extent Plaintiff contends that the Letter and Brochure represent an offer to improve

11   a debtor's relationship with HSBC, that is an imaginative interpretation that is not reasonably

12   grounded in the statements actually made.  To the extent Plaintiff argues that a debtor would

13   mistakenly believe that MCM could affect HSBC's trade line[8] (as opposed to that of Midland

14   Funding), that argument claims too much.  To accept her interpretation of the letter, the Court

15   would have to assume that the least sophisticated debtor is sophisticated enough to know that

16   HSBC has a trade line that is distinct from Midland Funding's trade line and yet would be misled

17   into believing that Defendants could affect HSBC's trade line despite the letter's clear indication

18   that Midland Funding is the current owner of a past-due account originally incurred with HSBC.

19   Moreover, the Court would have to presume that this distinction matters to the least sophisticated

20   debtor.  These are too many inferences to reasonably draw in Plaintiff's favor in the absence of

21   supporting evidence.[9]  The Court does not presume that the least sophisticated debtor is as

22   _____

23   [7] Although Plaintiff addresses the latter two phrases separately, the Court understands her
     argument to be that these statements, though literally true, are misleading with read together.  *See*
24   Pl.'s Opp. to MCM 12 ("a group of literally true statements taken together, can combine to form a
     misleading representation").

25   [8] The term "trade line" is not well defined in either Plaintiff's papers or in the Hendricks Report.
26   The Court infers that "trade line" refers to the data that a creditor or debt holder reports about its
     own accounts to a consumer credit agency.

27   [9] To the extent the admissible portions of the Hendricks Report can be understood to suggest that
     HSBC reporting a debt paid in full would have a more significant impact on a debtor's credit
28   rating than Midland Funding reporting the same information, that is irrelevant because the Letter

                                                    17

1  sophisticated and as irrationally optimistic as Plaintiff would suggest.  More reasonably, the least

2  sophisticated debtor would be unaware—as this Court is unaware—of the operation of a creditor's

3  "trade line."

4        In sum, even the most trusting of debtors would not reasonably read the Letter and

5  Brochure to be anything other than it is: a communication from a debt collector offering to settle a

6  debt originally incurred with HSBC.  Plaintiff cannot convert an otherwise lawful letter into

7  something else simply by focusing on a hyper-technical reading of certain phrases out of context.

8  Because the Letter and Brochure cannot reasonably be read to either threaten an action that MCM

9  could not take or otherwise materially misrepresent the effect of paying off the debt at issue, the

10  Court concludes that Plaintiff has failed to establish a violation of any provision of § 1692e and

11  MCM is entitled to summary judgment on those claims.  The Court accordingly GRANTS MCM's

12  Motion for Summary Judgment and DENIES Plaintiff's cross motion on the issue of liability

13  under the FDCPA.

14              **iv.  MCM is Not Liable Under the Rosenthal Act**

15        The Rosenthal Act requires compliance with the FDCPA and a debt collector that violates

16  the FDCPA also violates the Rosenthal Act.  *See* Cal. Civ. Code § 1788.17; *Hosseinzadeh v.*

17  *M.R.S. Assocs.*, 387 F. Supp. 2d 1107, 1118 (C.D. Cal. 2005).  Plaintiff's Rosenthal Act claims

18  against MCM rise and fall with her FDCPA claims, as she has offered no other theories of liability

19  that would be valid under the Rosenthal Act but not the FDCPA. *See* Pl.'s Mot. 11.  Because the

20  Court finds that the Letter and Brochure do not violate the FDCPA, MCM is also entitled to

21  summary judgment on Plaintiff's Rosenthal Act claims.  MCM's Motion for Summary Judgment

22  is accordingly GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED with

23  respect to the Rosenthal Act claim.[10]

24

25

26  cannot be reasonably read to promise an improvement to one's credit rating to any specific *degree*.

27  [10] Because there is no liability under the acts, the Court need not reach Plaintiff's motion for
summary judgment as it pertains to damages.  *See* Pl.'s Mot. 18-24.  In any event, the Court agrees
with MCM that the amount of statutory damages must be tried to a jury.  Def.'s Opp. to Pl.'s Mot.
28  21-22.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)    Defendants' Motion to Strike Expert Report and Testimony of Plaintiff's Expert Evan Hendricks is GRANTED IN PART and DENIED IN PART;

(2)    Defendant Midland Funding's Motion for Summary Judgment is GRANTED;

(3)    Defendant Midland Credit Management's Motion for Summary Judgment is GRANTED; and

(4)    Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication is DENIED.

**IT IS SO ORDERED.**

Dated: March 10, 2015

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

Appendix



**mcm** Midland Credit Management, Inc.
8875 Aero Drive
Suite 200
San Diego, CA 92123

*We can help you
reduce your past due
balance with
HSBC Bank Nevada, N.A.
and get your finances
back on track.*

05-03-2012

Ellen A Gold
3790 El Camino Real # 200
Palo Alto, CA 94306-3314



Dear Ellen,

Your credit report can help you reach your goals — or it can hold you back. Your past due balance of $3,647.81 with HSBC Bank Nevada, N.A. is being reported to the credit reporting bureaus and remains a negative item on your credit report.

Reduce the amount you owe and resolve your bill with these 2 options:

**1** Make your payment by 06-02-2012 and receive 40% off
Your payment will be reduced to $2,188.69 if you pay it in full by 06-02-2012. That's 40% off your current balance due.

**2** Make 6 monthly payments and receive 20% off
Your payment will be reduced to $2,918.25 if you make 6 monthly payments of $486.37 by 06-02-2012. That's 20% off your current balance due.

If you are unable to make the payments required with the two options above, we may be able to set up payments as low as $50 each month to help you resolve this past due bill.

We can help you get back on track. When you call, our skilled Account Managers will help you find a solution that fits your budget and your timeline.

Don't miss this opportunity to reduce the amount you owe and resolve this past due bill. We look forward to assisting you.

Sincerely,

H. Torres
Division Manager

P.S. We've included a free educational brochure for you, *Why paying your bills is so important to a good credit report.*

Hours of Operation:
M – Th 6am – 7pm
Fri 6am – 5pm
Sat 6am – noon PST

ED/KG

### Take your first steps towards repayment today!

* Once you make a payment, interest will stop being applied to your account

* You willl save up to $1,459.12 if you choose Option 1

* Offer expiration date: 06-02-2012

* Your credit report will be updated with each payment made, and once you've completed your agreed-upon payments to settle the account, your credit report will be updated as 'Paid in Full'!

Current Balance: $3,647.81
Payment Due Date: 06-02-2012
Original Creditor:
HSBC Bank Nevada, N.A.
Original Account No.:
5440450051997611
Current Owner:
Midland Funding LLC
MCM Account No.:
8535726585

 Call:
(800) 282-2644

 Click:
www.midlandcreditonline.com

 Mail:
Payment coupon below

*PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.*

---

**Payment Coupon for:**

Ellen A Gold
3790 El Camino Real # 200
Palo Alto, CA 94306-3314

**PAYMENT DUE:**
**06-02-2012**

Account: 8535726585

**Amount Enclosed:**

$

☑ Yes, I want to reduce my past due bill with:

☐ **OPTION 1**
Make your payment by 06-02-2012 and receive 40% off

☐ **OPTION 2**
Make 6 monthly payments of $486.37 and receive 20% off

**If you're paying by check or money order:**
• Please make your check/money order payable to Midland Credit Management.
• Use the enclosed pre-paid envelope to send in your payment to:
PO Box 60578, Los Angeles CA 90060-0578

**If you'd like to pay with a credit or debit card:**
• Please call (800) 282-2644

**If you'd like to set up a different payment option**
• Please call (800) 282-2644. We can help you set up a monthly payment plan of as low as $50 each month to resolve this past due bill.



**EXHIBIT**
**1**

12 8535726585 0 0218869 060212 9

A124 ED01

Important Information About Our Communication with You

**Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

Calls to and/or from this company may be monitored or recorded.

<u>**MAIL PAYMENTS TO:**</u> P.O. Box 60578, Los Angeles, CA 90060-0578

<u>**MAIL CORRESPONDENCE BUT NO PAYMENTS TO:**</u> MCM's business address at 8875 Aero Drive, Suite 200, San Diego, CA 92123

**We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law:**

**IF YOU LIVE IN CALIFORNIA, THIS APPLIES TO YOU:**
As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or <http://www.ftc.gov>.

"Nonprofit credit counseling services may be available in the area."

**IF YOU LIVE IN COLORADO, THIS APPLIES TO YOU:**
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE **WWW.COLORADOATTORNEYGENERAL.GOV/CA**

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer.  A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

Midland Credit Management has a Colorado office with the following address and toll-free number: 7807 East Peakview Avenue, Centennial, CO 80111-6849. Toll-free 1-866-796-8300.

**Only physical in-person payments may be accepted at this office location. All payments made via mail should be sent to the following address:** P.O. Box 60578, Los Angeles, CA 90060-0578

**IF YOU LIVE IN MASSACHUSETTS, THIS APPLIES TO YOU:**
NOTICE OF IMPORTANT RIGHTS:  YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT.  ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN (10) DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POST MARKED OR DELIVERED WITHIN SEVEN (7) DAYS OF SUCH REQUEST.  YOU MAY TERMINATE THIS REQUEST BY WRITING TO MIDLAND CREDIT MANAGEMENT, INC.

**IF YOU LIVE IN MINNESOTA, THIS APPLIES TO YOU:** This collection agency is licensed by the Minnesota Dept. of Commerce.

**IF YOU LIVE IN NEW YORK CITY, THIS APPLIES TO YOU:** New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728

**IF YOU LIVE IN NORTH CAROLINA, THIS APPLIES TO YOU:** North Carolina Department of Insurance Permit #101659, #4182, #4250, and #3777. Midland Credit Management, Inc. 8875 Aero Drive, Suite 200, San Diego, CA 92123

**IF YOU LIVE IN TENNESSEE, THIS APPLIES TO YOU:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**IF YOU LIVE IN UTAH, THIS APPLIES TO YOU:** As required by Utah law, you are hereby notified that a negative report on your credit record may be submitted to a credit reporting agency if you fail to meet the terms of your credit obligations.

**IF YOU LIVE IN WYOMING, THIS APPLIES TO YOU:** As required by law, you are hereby notified that a negative report on your credit record may be submitted to a credit reporting agency if you fail to meet the terms of your credit obligations.



Call **800-282-2644** and find
out how we can help you.

Learn more about our services online at
**www.midlandcreditonline.com**

# Why paying your bills is so important to a good credit report

Your credit score is key to getting
the credit you need throughout life.



©2010 Midland Credit Management  All rights reserved.          ED-IN01

## Having a good credit report is important when you want to:

- **Rent or buy a home** - Landlords and mortgage companies may review your credit report to see if you have an established behavior of making your payments on time every month.

- **Set up utilities or phone service** – A good credit history may be required for services like cable, water, phone or gas and electric.

- **Apply for a credit card** - Access to the convenience and spending power that comes with a credit card may depend on your credit history.

- **Get a loan** - When you need a mortgage or personal loan, financial institutions may base their decision on your credit history.

- **Start a business** – Your credit history may help you get financing to start a business.

## We can help you get your finances back on track. Call us at 800-282-2644.

## How your credit score is calculated

Lenders review your credit score to get a snapshot of your credit risk. These five criteria are used to calculate your FICO credit score:



*Payment history counts for 35% of your score. Paying bills on time has a positive influence on your score.*

1) **Your payment history** - Whether or not you've made on-time payments has the most impact on your score.

2) **What you owe** - Owing a lot or being near your credit limit on multiple accounts negatively impacts your score.

3) **Length of your credit history** - Reviewers want to see you can responsibly manage credit accounts over time.

3) **New credit** - Opening multiple new credit accounts can be a greater risk for lenders.

5) **Types of credit** - A balanced mix of different types of credit can help improve your score.

*Source: myFICO.com*

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
ST. CLOUD, MN
PERMIT NO. 725

*FIRST CLASS*

*Time Sensitive Documents*

PO Box 720
Sauk Rapids, MN 56379-0720

05-03-2012

Ellen A Gold
3790 El Camino Real # 200
Palo Alto, CA 94306-3314